Paul SIDORAN

v.

**The UNITED STATES.**

No. 425–74.

United States Court of Claims.

Feb. 23, 1977.

---

David McGoldrick, Tacoma, Wash., atty. of record, for plaintiff. Bonneville, Viert & Morton, Tacoma, Wash., of counsel.

Julie P. Dubick, Washington, D. C., with whom was Asst. Atty. Gen., Rex E. Lee, Washington, D. C., for defendant.

Before DAVIS, NICHOLS and KASHI-WA, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PER CURIAM.

Plaintiff is now an Air Force Major in the reserves, and is retired. His claim for back pay is based on the following facts:

In 1967 plaintiff, then a Captain, had been passed over twice for promotion to Major and was subject to release from active duty. He was notified that a Central Continuation Board had designated him as an officer who might request continued active duty. He executed under date of November 3, 1967, a paper reciting the foregoing and stating that he did so request. He further stated therein:

I understand that:

1. This signed certificate cannot be changed or withdrawn.

2. I will be continued on active duty until the Secretary of the Air Force determines that the Southeast Asia Mission is such.that my services are no longer required.

3. The period of continuation will in no event expire before 30 June 1969 and that I will be given at least six months' notice prior to my being released from active duty.

There were other stipulations not here immediately relevant. Lieutenant Duane L. Conques signed what was designated an "Authentication" as "Unit Personnel Representative," after plaintiff's signature.

Plaintiff served in Southeast Asia until separated December 3, 1970, having been since June 27, 1970, in hospital after surgery. As early as September 22, 1969, the Secretary determined that officers of plaintiff's status were no longer required to support the Southeast Asia mission. He fixed on or before June 30, 1970, as the date for those having under 18 years active duty service to be separated. It is not denied

that plaintiff on October 2, 1969, received notice that he would be separated on or before March 31, 1970, but this time was extended at his request until June 30, 1970, and the hospitalization effected the further extension.

On February 1, 1971, plaintiff voluntarily enlisted in the Air Force as a Sergeant and in 1973 retired into the reserve rank of Major, having thus completed his 20 years. He made various unsuccessful applications to the Air Force Board for Correction of Military Records (BCMR) to void his pass-overs and to obtain disability retirement. Those issues are not litigated here.

The instant claim is for back pay from the December 3, 1970, separation date to the retirement date, with general damages for injury to professional reputation and emotional distress. Plaintiff filed the suit on December 12, 1974. The gravamen of the suit may be said to be that the Secretary of the Air Force breached a contract, the document of November 3, 1967, by decreeing the separation of officers in plaintiff's class for budgetary reasons and not for the state of the Southeast Asia Mission, wherein, says plaintiff, his services were still required.

Defendant moves for summary judgment and relies chiefly on laches, but we cannot sustain its position on that ground. In *Cason v. United States,* 461 F.2d 784, 198 Ct.Cl. 650 (1972), we determined that defendant could plead laches in military pay cases, relying both on reason and on some rather venerable authority. In the same case, 471 F.2d 1225, 200 Ct.Cl. 424 (1973), we reconsidered and vacated the previous judgment, on the facts of that particular case, pointing out, among other things, that the laches doctrine could not be transplanted wholesale from the litigation to civilian employees, without regard to the many differences in military life and law.

■ We note herein that plaintiff remained an airman on active duty, though in enlisted rank, until some time in 1973. We do not think the lapse of time from then to the institution of suit was sufficient to constitute laches, nor do we think the previous time on active duty should be counted in the computation. By 50 U.S.C. App. § 525, plaintiff enjoyed a complete exemption from all statutes of limitations that might run on his claims, as long as his active duty continued. We think it would thwart the purpose of this statute to make laches run for the same period, and therefore, we decline to do it.

■ This commits us to the merits issues. Plaintiff says the document of November 3, 1967, was a contract authorized by 10 U.S.C. § 679(a), which authorizes the Secretary to make "standard agreements" with reservists "to provide definite terms of active duty (other than for training) for Reserves with their consent". Defendant denies that the continuation agreement with plaintiff was executed under that authority, but leaves us in some perplexity as it does not advise under what other authority the Secretary acted, nor does the agreement itself refer us to any. We can pass this issue by and assume, for purposes of this case only, that plaintiff had an enforceable contract. We can further assume that plaintiff got all he had coming to him, in the way of continued active duty, unless the Secretary exceeded his contractual authority in determining, as he did, that the continued services of officers in plaintiff's class were not required to support the Southeast Asia Mission. We can assume that plaintiff could prove a breach if he could prove the separation was really ordered for some other and unrelated reason.

Plaintiff's theory however, does not offer a triable issue of fact. He says the Secretary decided as he did, not because of a change in the needs of the Southeast Asia Mission, but because of budgetary considerations. In fact, the BCMR stated in an April 10, 1972, letter to plaintiff that the action complained of was "Due to budgetary adjustments for FY 1970."

Plaintiff's fallacy is in supposing that the situation of the "Southeast Asia Mission" and the making and enforcement of budget restrictions were matters that existed in two separate universes of discourse. If we

suppose that a decision had been made at the highest levels of Government that the situation in Southeast Asia mandated or permitted a winding down of the war or quasi-war in that locality, it would express itself to the Secretary of the Air Force in new budgetary stringencies. The language in paragraph 2, quoted above, is broad enough for the Secretary's determination respecting the "Mission" to be that he would spend less money upon it. There is just simply no commitment in the language used that the Secretary would decide to expand, maintain, or cut back the "Mission" only in grand disregard of dollar outflow. There is therefore no triable issue of relevant fact as to whether the Secretary's reasons were budgetary.

In view of the foregoing, and upon consideration of the record and the briefs of the parties, but without oral argument, the defendant's motion for summary judgment is sustained, and the petition is dismissed.