John E. STEWART

v.

The UNITED STATES.

No. 198–77.

United States Court of Claims.

Dec. 12, 1979.

John A. Everhard, Washington, D. C., attorney of record, for plaintiff. Thomas H. King, Washington, D. C., of counsel.

LeRoy Southmayd, Jr., Washington, D. C., with whom was Acting Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant. George M. Beasley, III, Washington, D. C., of counsel.

Before KASHIWA, KUNZIG, and BENNETT, Judges.

ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

BENNETT, Judge:

This military pay case is before the court on motions by both parties for summary judgment. We grant defendant's motion in part, but as to the rest of the claim deny both motions since we conclude that further administrative consideration of it is required.[1] Indeed, at least one of the issues is of first impression and its resolution by the court may dispose of, or at least affect, other cases on the docket and some about to be filed. The court remands the case to the Air Force Board for the Correction of Military Records (the board) with instructions to make findings and to render an opinion on issues hereinafter identified. For the assistance of the board and the parties, we will express our present concerns about the problems we see with this case in its present posture and will dispose of such issues as are now ripe for decision.

Plaintiff was formerly a captain in the Air Force Reserve. He was released from active duty on July 31, 1975, because he was twice nonselected for promotion to the temporary rank of major by selection boards which convened on September 17, 1973 (1974 board), and October 7, 1974 (1975 board). Thereafter, plaintiff reenlisted as a staff sergeant to complete the 20 years of service needed for retirement. At the time of plaintiff's release in 1975 he had completed over 17 years of active military service, the last 12 as a commissioned officer.

In all, plaintiff has contested seven different OER ratings, which claims were considered six times by officer personnel records review boards (OPRRBs) and two times by correction boards. One of the OERs (October 11, 1966–March 27, 1967) was removed by the OPRRB in 1972 and this OER was not in his selection folder before either selection board.[2] No other adjustments were made and the other six OERs remained in his records. Plaintiff seeks an order from this court excising the six OERs and the two nonselections caused by them. He seeks back pay and reinstatement or, in the alternative, promotion.

Plaintiff also alleges that the 1975 selection board which considered him was defective in that it did not have the appropriate number of Reserve officers on it, in violation of 10 U.S.C. § 266 (1976). Plaintiff raises this issue here for the first time, not having raised it before the Correction Board.

I

As noted, plaintiff contests, for various reasons, six different OERs that were not

---

1. The order of the court issued August 24, 1979, remanding the case to the trial division was vacated by order of December 12, 1979.

2. No explanation was placed in plaintiff's records concerning the gap caused by the removed OER. Plaintiff has not, however, made an issue of this factor.

voided by either the OPRRB or the Correction Board. These will be dealt with separately.

The first group includes OERs received by plaintiff while serving as a second lieutenant for the periods February 5, 1963–May 10, 1963 (6–3), May 11, 1963–November 10, 1963 (4–2), and November 11, 1963–May 10, 1964 (5–2). Plaintiff alleges that these OERs were inaccurate because his raters intentionally downgraded his ratings in order that plaintiff would show job progression. This is fully supported by statements made by his raters. The Correction Board and the OPRRB both held that this was an insufficient ground for voiding the OERs, and our conclusion is that the decision should not be challenged. In *Savio v. United States*, 213 Ct.Cl. 737 (1977), the court held that such comments by raters were insufficient for this court to void OERs on the grounds of an abuse of discretion. *See also Borgford v. United States*, Ct.Cl. No. 125–75 (order, October 26, 1979); *Tanaka v. United States*, 210 Ct.Cl. 712 (1976), *cert. denied*, 430 U.S. 955, 97 S.Ct. 1599, 51 L.Ed.2d 804 (1977); *Wilson v. United States*, Ct.Cl. No. 272–74 (order, August 31, 1979); *Duggan v. United States*, Ct.Cl. No. 153–56 (order, August 31, 1979).

The second group of contested OERs include two ratings covering the periods May 11, 1965–May 3, 1966 (5–2) and May 4, 1966–October 10, 1966 (5–2). These OERs are challenged for two reasons. The first reason is that the OERs were the product of the personal animosity and bias of the rater and indorser, which made them inaccurate. The rater's and indorser's prejudice was allegedly caused by the fact that plaintiff had a Japanese wife. There are several statements by knowledgeable persons citing specific incidents supporting this challenge. Opposing this, the OPRRB cited the fact that the rater and indorser submitted statements supporting plaintiff's request to void the OERs on the second ground which will be discussed below. The OPRRB did not believe that these two individuals would have tried to help plaintiff if they had been prejudiced. Also, of some importance, it appears that the immediately following OER, which was voided by the OPRRB, had been influenced in some direct way by the prior rater and indorser.

The second ground for challenge of the OERs was that plaintiff was rated on the basis of the position of weapons assignment officer rather than the easier job of air surveillance officer. Both the rater and indorser submitted statements supporting this. Further, the local command unit involved agreed with this and recommended the voidance of the OERs for this reason. The OPRRB stated that "the AFSC is identical" and that the difference in assignment between the jobs is solely based on competence. These are close, complex, and contested issues of fact and require further development of the facts and law.

The last category of OERs involves one for the period January 27, 1968–November 5, 1968 (7–2). Plaintiff claims that the rating officer did not supervise him for the requisite 90 days. During part of this time plaintiff had been hospitalized. The OPRRB concluded that the 90-day period had been satisfied because periods less than 30 days in the hospital are not subtracted from the rating period. There is a dispute concerning the number of days in the hospital and the evidence is unclear. We have not been shown that the issues outlined above concerning the OERs were considered or decided by the Correction Board on the two occasions it rejected claims by plaintiff. The Correction Board denied plaintiff's applications by brief form letters on April 8, 1975, and November 10, 1976, without discussing the issues. Plaintiff's second application for correction was supported by the statements of 29 individuals and 10 documents. Defendant does not contend that consideration by the OPRRB precludes Correction Board action. All of the above unresolved OER issues in the case must have the attention of the Correction Board on remand.

II

The 1975 selection board which considered plaintiff for promotion had 25 mem-

bers, only one of whom was a Reserve officer. Approximately 30 percent of the officers the board considered for promotion were Reserve officers. Plaintiff alleges that this was legal error in that one out of 25 is not an appropriate number of Reserve officers under 10 U.S.C. § 266 (1976).

The statute cited requires that a promotion board which considers Reserve officers must include "an appropriate number of Reserves, as prescribed by the Secretary concerned under standards and policies prescribed by the Secretary of Defense." The Senate report on the statute explained: "The term 'appropriate numbers' rather than a fixed ratio is used, since the same board may be considering both Regular and Reserve personnel. In such case the proportion of Reserve officers on the board should be roughly equal to the proportion of Reserves being considered." S.Rep. No. 1795, 82d Cong., 2d Sess., *reprinted in* [1952] U.S.Code Cong. & Admin.News 2005, 2042. Certainly, one out of 25 is not even close to being proportionate to the number of Reserve officers being considered for promotion (30 percent).

The Secretary of Defense has set forth standards and policies in Department of Defense Instruction No. 1205.4 (June 23, 1959), which provides:

The intent of the Congress in this Section is clear, that a member of a reserve component who is the subject of any of the indicated board actions shall be assured a fair representation of reserve membership on the board. The Secretaries of the military departments will, with due regard to availability of qualified reservists, pertinent statutory provisions, the nature of the board action, and the categories, regular and reserve, which may be considered by the board, provide in the membership of the indicated boards, to the fullest practicable extent, a fair and adequate representation of members from the reserve components.

Air Force regulations provide little extra guidance, simply stating:

c. If Reserve of the Air Force officers are considered include an appropriate number of Reserve of the Air Force officers. [AFR 36–89, ¶ 2–3.]

Defendant contends that one (1) was an appropriate number of Reserve members on the selection board in this instance. Defendant alleges, supported by a "declaration" by Lt. Gen. B. L. Davis, Deputy Chief of Staff for Personnel, Department of the Air Force, Washington, D. C., that standards for temporary selection board membership, established by the Air Force, were fully complied with in constituting the 1975 selection board and were considered necessary to the viability of the temporary promotion system.

As explained in General Davis' declaration, the two principal criteria used to name a selection board member are that he or she must be a colonel and must have served on active duty as a career officer. In 1974 when the selection board met, there were 5,108 line colonels on active duty, of which 88 (1.7 percent) were Reserve officers. Only three of the 88, however, were career Reserve colonels, the other 85 were serving short tours under 10 U.S.C. § 265. Therefore, only three Reserve officers met the two principal criteria. There were other criteria which had to be met: "[The officer] had not failed or been deferred for promotion; he had an outstanding performance record; he had 15 years of active commissioned service; he had 2 years' retainability in the Air Force; and had not served on the same board the previous year." After the application of this criteria (though it is not stated which one or ones were determinative), only one of the remaining Reserve colonels was qualified to serve and this one officer was, in fact, on the 1975 selection board. It is admitted in the declaration, however, that when Reserve generals are required for certain action, they use retired or nonactive duty Reserve generals because of the lack of active duty Reserve generals.

The alleged standard requiring selection board members to be colonels is purportedly patterned on the selection board system for *Regular* officers for promotion to *permanent* rank. Such is governed by statute, 10 U.S.C. § 8297 (1976), which requires that

each board "shall be composed of at least five officers of the Regular Air Force who hold a regular or temporary grade above lieutenant colonel, and who are senior in regular grade to, and who outrank, any officer considered by that board." The alleged standard that requires career status with 15 years' active duty is based on experience to the effect that one experiment with a Reserve officer with less experience showed that such a requirement was necessary to insure competence.

Thus, defendant stresses those parts of DOD Instruction No. 1205.4 "with due regard to availability of qualified reservists" and "to the fullest practicable extent" in asserting that these standards are a reasonable exercise by the Secretary of the Air Force's discretion and thus one (1) was an "appropriate number" in this instance and "a fair and adequate representation of members from the reserve components." Whether these standards represent the informal policy of the Air Force in determining the criteria for temporary selection board membership, they plainly are not the formal policy. AFR 36–89, ¶ 28b (28 April 1971), not mentioned by either party in the cross-motions for summary judgment, states:

b. Board Composition:

(1) Each board must include at least five commissioned officers. If members of reserve components are among the officers being considered for promotion, the board must include an appropriate number of Reserve officers. Board members must be serving on active duty in grades higher than that of any officer the board will consider and should have higher permanent grades.

Plaintiff was last considered for promotion to the temporary rank of major by the 1975 selection board of 25 members which, as we have noted, had only one Reserve officer on it, a colonel. Under the regulation, Reserve and Regular officers, except for the board president, in the temporary or permanent rank of major or above, were qualified to sit on that board. Not one of the informal standards attested to by General Davis is required by the regulation. We have been given, instead, what amounts to an informal, unpublished, secret Air Force policy (if it is the policy) [3] which effectively insures that the statutory requirement in 10 U.S.C. § 266 of "an appropriate number" of Reserve officers is, in practice, merely an equivalent to token Reserve officer membership. Our necessary conclusion follows that this policy unfairly restricted the available pool of Reserve officer membership so that fair and adequate membership could not be had. This was an abuse of discretion. One Reserve officer out of 25 on the board is not (under the statute, legislative history, Air Force regulations, and DOD instructions) an appropriate number in this case and was legal error. Further, it is provided by 10 U.S.C. § 277 (1976), as follows:

Laws applying to both Regulars and Reserves shall be administered without discrimination—

(1) among Regulars;

(2) among Reserves; and

(3) between Regulars and Reserves.

Plaintiff therefore appears to be entitled to have his nonselection for promotion by the 1975 selection board voided. His claim for promotion must, of course, be denied as beyond our jurisdiction.

---

**3.** Plaintiff's response to the suggestion for en banc reconsideration of the August 24, 1979, order states as to the declaration of General Davis:

"Finally, declarant's statement is at variance with the total force concept and numerous official statements of long standing Air Force policy by the Secretary of the Air Force, the Chief of Staff, the Vice Chief of Staff, the Assistant Secretary of the Air Force for Manpower, Personnel and Reserve Forces and other high officials that members of the Air Force Reserve

are qualified, capable and competent to serve side-by-side with the active Air Force. * * *"

Plaintiff appends a recent statement by the vice chief of staff that "[o]ur reserve components are full partners with their active counterparts in every facet of Air Force activity." He submitted figures to support his statement, demonstrating that the Reserve components are so vital and substantial in number that without them there would be inadequate national defense.

■ Having voiced our concerns about the apparent mistakes in this case, we nevertheless do not pronounce them as a basis for final judgment at this stage of the proceedings. Where a selection board is not properly constituted, it is legal error. Thus, we decided in *Doyle v. United States*, 220 Ct.Cl. ——, 599 F.2d 984 (1979), that where Reserves were required on a selection board and there were none, legal error had been committed where the results were harmful to plaintiffs. Here we have a variation of that theme in that there was only one Reserve on the board. Where should the line be drawn as to how many are necessary to comport with the statute, regulations, and intent of Congress? It does not appear to be a particularly difficult question in this case, on the information now before the court, but we anticipate other cases in which there will be additional board members from the Reserve and plaintiffs will contend that they were insufficient in number. We intimate no ruling here on those claims. Certainly in those cases the defendant will have to make a convincing showing that the statute, regulations, and published directives were complied with by those particular boards at those particular times and that there was no evasion of the legal procedural requirements that has led to harmful error.

■ What causes us to refrain from now entering a final judgment in the pending case on the issue of "one Reserve" membership on the selection board, is that the Correction Board has not spoken to the issue. Had it done so, we would not hesitate on the information now before us. Plaintiff thinks we should rule anyway because, as often held by the court, the Correction Board is a permissive remedy. and under it there is no requirement for the exhaustion of administrative procedures for relief. Plaintiff did not present the issue to the Correction Board because he tells us that he did not learn about this circumstance of single Reserve membership on the board until after his petition was filed. Had plaintiff known of this fact, or if he reasonably should have known but did not

raise it before the board, he would have waived his right to do so and the court could, in its discretion, proceed to decision without remand. *Doyle v. United States, supra*, 220 Ct.Cl. at ——, 599 F.2d at 1000; *Borgford v. United States, supra*. We have been given no indication here, however, that plaintiff knew, or should have known, of the one Reserve issue when he went before the Correction Board. Qualifications and availability of Reserve members for selection boards are, in the first instance at least, best left to the sound discretion of the military. In *Doyle v. United States, supra*, 220 Ct.Cl. at —— ——, 599 F.2d at 1000–01, the court en banc held that an officer who had presented his claim to the Correction Board must present all alleged errors that he knows of to it. Executive agencies and departments should first be given a chance to correct their own errors and to permit the Government to mitigate or avoid claims that might otherwise be created and have to be litigated in the judicial system. This accords with the principles of justice. In the instant case, plaintiff could have gone back to the board with the issue and must do so now. We do not wish to enter judgment on an issue concerning which there may be facts not before us that would impact materially on the ultimate legal conclusion. We think it appropriate to give the board the opportunity to consider all of plaintiff's claims at one time, rather than piecemeal, and to give the parties such opportunity as they may wish to avail themselves of to produce evidence. We have expressed our concerns about the OER and "one Reserve" issues and the parties and the board will be aware of them in developing the record as a basis for the board's findings and opinion thereon.

Accordingly, upon consideration of the motions, without oral argument, defendant's motion for summary judgment is granted as to the OERs for the following periods:

(1) February 5, 1963–May 10, 1963;

(2) May 11, 1963–November 10, 1963; and

(3) November 11, 1963–May 10, 1964.

The petition is dismissed as to claims based on these OERs.

The cross-motions for summary judgment are otherwise denied without prejudice. The case is remanded to the Air Force Board for Correction of Military Records for consideration consistent with this opinion on the unresolved OER issues and the "one Reserve" issue. 28 U.S.C. § 1491 (1976). Plaintiff is designated as the reporting party under Rule 149.