**Joseph H. ANDREWS, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Jake C. BLOOM, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Hershel P. BURDEN, Jr., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Earl N. HANEL, Jr., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Billy R. HARPER, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Stanley H. PETTERSEN, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Nos. 640–82C, 153–84C, 242–82C, 366–83C, 370–82C and 512–82C.**

United States Claims Court.

Aug. 21, 1984.

James W. Mitchell, Falls Church, Va., for Andrews; John H. Everhard, Falls Church, Va., for Pettersen; Allan W. Farlow, Washington, D.C., for Bloom and Harper; Barry W. Finkel, Warrensburg, Mo., for Burden; and Neil B. Kabatchnick, Washington, D.C., for Hanel, plaintiffs.

Sara V. Greenberg, Washington, D.C., with whom were Acting Asst. Atty. Gen., Richard K. Willard, Sharon Y. Eubanks, Joseph T. Casey, Jr., Colvin W. Grannum, Washington, D.C., and Leodis C. Matthews, Asst. U.S. Atty., San Diego, Cal., for defendant.

Guy J. Sternal, Lt. Col., United States Air Force, and Louis R. Davis, Washington, D.C., of counsel.

OPINION

NETTESHEIM, Judge.

BACKGROUND

By order dated May 16, 1984, the court allowed each plaintiff in these consolidated

cases to submit a supplemental brief distinguishing his case from *Foster v. United States*, 3 Cl.Ct. 440 (1983), *aff'd*, 733 F.2d 88 (Fed.Cir.1984), in order to avoid the laches bar imposed in that case.

Like Foster, Heimerdinger, and Olson in the referenced case, plaintiffs are all former United States Air Force Reserve officers who waited more than six years to challenge their release from active service as a result of passovers for promotion by improperly constituted selection boards. Although the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.App. § 525 (1976), exonerates plaintiffs from this court's six-year statute, they are subject to the defense of laches, which defendant urges bars their claims.

In *Stewart v. United States*, 222 Ct.Cl. 42, 611 F.2d 1356 (1979), the United States Court of Claims held that the temporary major selection boards convened in 1973 and 1974 did not contain an "appropriate number" of reserve officers, as required by 10 U.S.C. § 266(a) (1970). These cases, as did *Foster*, followed in the wake of the *Stewart* decision and involve the same boards, as well as similarly defective boards that convened in 1971, 1972, 1975, and 1976.

In *Foster* this court held that plaintiffs' failure to inquire about the composition of the boards after their claims accrued upon their release from active duty constituted unreasonable delay for purposes of laches, unless excused by actions of defendant which substantially contributed to the delay or frustrated attempts to obtain information. 3 Cl.Ct. at 443 (citing *Gruca v. United States Steel Corp.*, 495 F.2d 1252, 1260 (3d Cir.1974)). Such an excuse was not made out by a showing that the Air Force failed to inform plaintiffs about the composition of the boards, or incorrectly informed plaintiffs that the names of board members were privileged information, or "rebuffed" their inquiries. A showing was required that the Air Force interfered with plaintiffs' opportunities to obtain information under the Freedom of Information Act or otherwise. The court noted that fact

sheets distributed to the nonselected officers recited that board procedures were freely discussed and that only the names of board members and candidates' scores were classified. A statement in the fact sheets revealing that the boards were composed of colonels with a major general president put plaintiffs on notice that reservists were underrepresented on the boards because few reservists attain the rank of colonel. 3 Cl.Ct. at 443–44. (After March 13, 1975, the Air Force released names of promotion board members. *Id.* n. 5.) Finally, the court held that defendant's increased liability for back pay owing to the passage of time constituted sufficient prejudice from the delay to justify imposing the laches bar against plaintiffs. *Id.* at 446.

Except for plaintiff Hanel, who learned of the *Stewart* litigation shortly after its inception in 1977, plaintiffs first learned of the selection boards' improper composition either as a result of the publicity attending the decision in *Stewart* in late 1979 and early 1980 (Andrews, Pettersen, and Burden) or even later, apparently through other sources (Bloom and Harper). None of the plaintiffs adequately explains his failure to inquire about the boards' composition during the period between his release from active duty and his learning of the *Stewart* decision. This delay of four and one-half to over seven years in each case alone suffices to justify imposing the bar of laches. *Brundage v. United States*, 205 Ct.Cl. 502, 509, 504 F.2d 1382, 1386 (1974), *cert. denied*, 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975) (delay of slightly longer than three years and eight months bars serviceman's claims). Plaintiffs all filed suit after defendant began settling *Stewart*-type cases in early 1982 with plaintiffs who had filed suit within six years of their release. The court considers case by case the distinctions drawn by each plaintiff between his case and *Foster*.

## DISCUSSION

### 1. Andrews

Plaintiff Andrews offers no explanation for his inactivity before 1980. Instead, An-

drews devotes his submission to explaining the delay between his learning of the *Stewart* decision in December 1979 and filing suit in May 1982.

At oral argument counsel for Andrews and Pettersen offered to waive their claims for back pay accrued after the date of defendant's settlements with the other plaintiffs. Counsel thereby suggested that implicit in defendant's settlement policy was an admission that it was not significantly prejudiced by having to disburse only back pay accrued as of that date.

Counsel is not the only party to this litigation who has remarked upon the seeming injustice to individual plaintiffs of imposing an arbitrary six-year cutoff for settlements. Previously indolent plaintiffs who leapt on the bandwagon at the last moment before defendant's deadline have recovered, while plaintiffs, like Hanel, who bestirred themselves at an early date, but asked the wrong questions; who took unfortunately misdirected action; and who incorrectly assumed that the Air Force administrative hierarchy was acquainted with its failing and would direct seekers of redress how to obtain it, are left out in the cold.

After learning of *Stewart*, Andrews, according to his statement, initiated a flurry of inquiries to his Central Base Personnel Office ("CBPO") about the majors' boards, but could find no one who would tell him about them. Officials at Headquarters, Military Personnel Center at Randolph Air Force Base, Texas, told him that there never had been an illegally constituted board, that he should wait for action by his CBPO, and that the ignorance of his CBPO was "not their problem." Although plaintiff contacted his present counsel in mid-1980, he refrained from filing suit at once because the Court of Claims, instead of entering judgment in *Stewart*, allowed the Air Force Board for Correction of Military Records (the "AFBCMR") an opportunity to correct the problem. Plaintiff delayed in anticipation of a decision complying with *Stewart*. The AFBCMR, however, did not announce its refusal to follow *Stewart* for

another two years, *see Foster*, 3 Cl.Ct. at 445, whereupon Andrews filed suit. Andrews effectively was penalized for awaiting the AFBCMR's decision in *Stewart* by being excluded from defendant's settlement with those who sued in court within six years. *See Hannon v. United States*, 3 Cl.Ct. 89, 91 (1983), *aff'd mem.*, 732 F.2d 168 (Fed.Cir.1984). In the case of plaintiff Burden, the Air Force itself recommended in May 1980 that he should wait and then file with the AFBCMR if the board resolved *Stewart* in plaintiff's favor. After fruitless inquiries as to the status of the AFBCMR proceeding, Burden filed two applications with the board in August 1980 and September 1981. Both were denied. Excluding Burden from settlement also can be viewed as effectively penalizing him for pursuing administrative remedies instead of filing suit within six years of his release in 1975.

The court can neither require defendant to settle with plaintiffs such as Andrews and Burden nor penalize defendant for choosing not to settle with them. Interfering with defendant's exercise of business judgment in deciding to settle most cases filed within six years of release would violate the overriding policy of the law to encourage settlements between litigants. Election of a particular settlement policy cannot be viewed as unfair treatment of those excluded so as to deprive a party of the laches defense.

2. Pettersen

Plaintiff Pettersen's statement explains his inactivity between his release in June 1975 and discovery of his cause of action in 1980 by alleging that he was misinformed that he could not appeal his nonselection. He cites to a paragraph on appeal of nonselection in the separation fact sheet distributed to unsuccessful candidates, which began:

There are no reclama provisions. However, if you believe you have facts to appeal your nonselection, an application may be submitted under AFR 31–3 .... Appeals based on an alleged unjust Effectiveness Report(s) (OER) must first be

processed under AFR 31–11 .... If the Air Force Correction Board rules favorably in your case ... action will be taken by AFMPC to restore you to active duty ....

According to plaintiff's statement, he discussed this paragraph with personnel staff at Edwards Air Force Base, California, but "it always boiled down to one thing": that while Officer Effectiveness Reports ("OER's") could be appealed, "anything other than that is impossible to prove." Plaintiff states, "[A]fter running into obstacles on several occassions [sic] [I] became tired of pursuing the matter and accepted their decision." No indication is present that plaintiff inquired as to the possibility of attacking the composition of the boards themselves on appeal, as opposed to trying to appeal the boards' decisions. Plaintiff chose not to appeal his OER's because he was satisfied with them. Nor does plaintiff suggest that whatever obstacles he encountered took the form of impeding inquiry into the composition of his promotion boards.

Pettersen also alleges that it was impossible to obtain any information regarding a potential cause of action based on his nonselection during his tour of duty in Germany from June 1978 to June 1982, after which he filed suit. (From 1976 through June 1978 plaintiff was dealing with a new career and deaths in the family.) Plaintiff does not describe any attempts by him to obtain such information before 1980, however, and his duty overseas did not prevent him from learning of *Stewart* early in that year. *See Foster*, 3 Cl.Ct. at 444. Like Andrews, Pettersen did not file suit until August 1982, even though he obtained the address of Stewart's counsel as early as August 1980, because of his mistaken belief that he could await a general settlement with all aggrieved officers before filing his own claim.

3. Hanel

Plaintiff Hanel by affidavit avers that upon investigation into the reasons for, and the possibility of appealing his nonselections, following his release in June 1975,

"[w]e were told that, in effect, we had done all that could be done and that we had no recourse or basis for appeal." The separation fact sheet distributed to rejected candidates contradicts the blanket assertion that appeal was impossible.

Hanel does have one unique basis for distinguishing his case from *Foster*. Unlike the other plaintiffs, Hanel heard about the defective composition of the boards soon after being posted to Turkey in late 1977, before the *Stewart* decision was announced. Yet he refrained from suing until June 1983. Hanel submits the affidavit of M/Sgt. Sam H. Tubb, Jr., who states that he learned of the *Stewart* litigation while stationed in Germany and implies that he discussed it with plaintiff (then in Turkey) by telephone, expressing to plaintiff his opinion that the suit had no chance of success.

Hanel further avers that he inquired of his CBPO in Turkey "if anything was being done to get any of the officers who had been nonselected by the 1973 and 1974 selection boards back on active duty in a commissioned status...." The CBPO informed him that "as far as they knew," the selection boards had not been defective, that no officers were being reinstated, and that plaintiff should check when he returned to the United States.

Unlike plaintiff Pettersen, however, Hanel made no effort to contact Stewart's or other counsel in order to join the litigation then in progress. Instead, he waited until after he returned to the United States in January 1980 before renewing his inquiries. He asked Lt. Bruce Basye at the CBPO at Mather Air Force Base, California, whether any action was being taken to reinstate officers nonselected in 1973 and 1974. Lt. Basye, who has submitted an affidavit, replied "that he could find no actions as to the reversal of the findings of [the boards] and that I had no grounds for appeal." A second inquiry "regarding any possibility of reinstatement" elicited "a negative response." In his affidavit Lt. Basye states that, on his first attempt, plaintiff merely asked whether any action

was being taken to reinstate nonselected officers, without informing Basye of the grounds on which he believed an appeal of his nonselections to be justified or his basis for believing that reinstatement was possible. Consequently, Basye brushed off plaintiff's query as "a silly question." According to Basye, plaintiff's second inquiry was whether the Defense Officer Personnel Management Act of 1980 provided for the reinstatement of "RIF'd" officers.

In view of the evident fact that plaintiff's requests for information did not raise the matter of the selection boards' composition—the basis for the instant suit—Hanel's claimed reliance on the advice he was given does not excuse his failure to sue, because he had knowledge that he had a cause of action and that others similarly situated were bringing suits.[1] In his spirited reply brief, plaintiff strives to redeem his failure to inquire specifically about the boards with an argument which reduces to the claim that plaintiff's inquiries were at least prompted by his discovery that the boards were defective. On this showing the Air Force cannot be charged with interfering with plaintiff's obtaining knowledge of his cause of action or with misinforming plaintiff as to his pursuit of remedies.

In view of Hanel's early acquaintance with the challenge to the boards, the court is surprised by his assertion that he did not learn that litigation was in progress until April 1983. *Foster* disposed of a similar argument. *See Foster*, 3 Ct.Cl. at 444 (citing *Ide v. United States*, 25 Ct.Cl. 401

(1890)). Hanel's inactivity for three and one-half years after *Stewart* was announced before filing suit in June 1983 alone suffices for the imposition of the laches bar. *See Brundage v. United States*, 205 Ct.Cl. at 509, 504 F.2d at 1386. Plaintiff's claimed ignorance of the power of the AFBCMR to void his nonselection cannot be blamed on the Air Force, since the separation fact sheet informed plaintiff of this avenue of relief. Nor, of course, can plaintiff's ignorance of the doctrine of laches be charged to the Air Force.

Plaintiff Hanel also argues that the three-year period during which *Sidoran v. United States*, 213 Ct.Cl. 110, 550 F.2d 636 (1977), was good law should not be taken into account in determining whether he is guilty of laches. Plaintiff Burden makes the same argument. The *Sidoran* decision, which was overruled by the United States Court of Claims in *Deering v. United States*, 223 Ct.Cl. 342, 347–49, 620 F.2d 242, 244–45 (1980) (en banc), held that the doctrine of laches did not apply in military pay cases. Plaintiff's argument proves too much. If laches were "tolled" during *Sidoran's* incumbency, then *Deering* was wrongly decided and should have announced a prospective rule only, instead of imposing the bar on the plaintiff in that case.

Finally, plaintiff argues from the fact that defendant has settled *Stewart*-type suits brought within six years of accrual that no prejudice to defendant would result

---

1. Plaintiff's principal argument to justify his reliance on the advice of the CBPO is based on the existence of legends on the application form for correction of military records (DD Form 149, 1 Feb. 1978), which state, "(Applicant has exhausted all administrative channels in seeking this correction and has been counseled by a representative of his/her servicing military personnel office ....)," and "representation by counsel is not required to insure full and impartial consideration of applications." Plaintiff argues that these legends encourage reliance on the Air Force itself to "take care of its own," and typify a philosophy of discouraging resort to independent legal action, which produces a "chilling effect" on suits by servicemen. In this atmosphere, plaintiff argues, he should not be charged with unreasonable delay for his failure

to go elsewhere for assistance after being rebuffed by the CBPO; instead, the Air Force should be held to the consequences of its failure to establish machinery for advising its personnel offices of the problem with the composition of the selection boards and of the means of obtaining redress. (Defendant agrees that the CBPO has an advisory function in the context of an AFBCMR application.)

It may be a harsh rule which requires servicement to display the same level of vigilance and diligent prosecution against an organization which wields such daunting power over them, and on which they are so dependent, that is demanded of litigants who stand on an equal footing towards each other. This court nonetheless is bound to follow it. *See Foster*, 733 F.2d at 89.

from its being subjected to liability for back pay to plaintiffs who have delayed for more than six years. This contention is answered by the court's holding in *Foster* that the greater the defendant's potential liability, the greater the prejudice. *Foster*, 3 Ct.Cl. at 446. The question thus becomes whether a plaintiff's delay is excusable or not. Hanel's excessive delay is not excused by any act of interference or concealment by defendant.

### 4. Burden

Although plaintiff Burden, who was released in 1975, vigorously pursued administrative remedies between his learning of *Stewart* in late 1979[2] and filing suit in May 1982, the only actions he claims in his affidavit to have taken prior to 1980 were an unsuccessful application, after his first passover for promotion, to correct an OER (which is irrelevant, because OER's are not written by promotion boards), and an inquiry with his squadron commander and personnel office regarding the possibility of appealing his nonselections. In response Burden, like Hanel, was told "that, in affect [sic], I had done all that could be done and that I had no recourse or basis for appeal." Plaintiff's pursuit of administrative remedies beginning in 1980, however, warrants exclusion for only two years and five months from a laches period of seven years between his release and filing in court. *Cason v. United States*, 200 Ct.Cl. 424, 432, 471 F.2d 1225, 1229–30 (1973).

### 5. and 6. Bloom and Harper

Instead of distinguishing their cases from *Foster*, Bloom and Harper attack the selection boards by using a different theory than the other plaintiffs and argue that the doctrine of unclean hands deprives defendant of its laches defense with respect to this separate cause of action.

Bloom and Harper, who were released in 1977 and 1974 and sued in 1984 and 1982, respectively, offer to prove that, in evaluating candidates for promotion, the selection boards divided themselves into five-member panels, some of which contained no reservists at all. Twenty five of the board members served on five panels. Thus, if a board contained only one reservist, 80 percent of the reservists reviewed by it were considered by panels composed entirely of regular officers.

In 1975 the Air Force destroyed all records of panel membership and of which panel considered which candidate, making it impossible for plaintiff Harper to discover whether he was considered by panels comprised of all regular officers or by ones containing reservists. The Air Force's new policy of destroying this information before publication of results prevented Bloom from ever ascertaining if he was considered by a panel containing a reservist. Plaintiffs argue that this deliberate act of concealment renders defendant guilty of unclean hands and that the Air Force was under an obligation to disclose the fact that it employed this procedure.

To the contrary, the Air Force did not conceal the use of five-man panels. The separation fact sheets for the 1972 and 1973 boards, also involved in *Foster*, expressly state that such panels selected from the whole board are employed in the selection process. Bloom does not contend that the fact sheets for the 1975 and 1976 boards differed. In any event, plaintiffs have no causes of action based upon the Air Force's use of this procedure. Instead, their causes of action are based on the use of only minuscule numbers of reservists on entire selection boards, in violation of 10 U.S.C. § 266(a). Defendant's destruction of the records of panel membership and case assignments did not conceal these causes of action. Plaintiffs do not allege that the use of five-man panels was unlawful, only that it compounded the problem caused by the unlawful exclusion of all but a very few reservists from the boards.

---

**2.** Burden's first application to the AFBCMR was filed on August 26, 1980; but between May 2, 1980, when Burden was advised, *inter alia,* that he should file with the AFBCMR if the Air Force on remand decided favorably to Stewart, and December 16, 1982, when his second application was denied, the AFBCMR declined to follow the court decision. *See Foster*, 3 Cl.Ct. at 445.

Plaintiffs' argument would allow them to wait indefinitely before bringing suit, while piling up their damages, because they never could discover their causes of action. Harper's period of laches would be frozen at less than two years (the length of time between his release and the destruction of the records) no matter how long nor how unreasonably he delayed to defendant's increasing prejudice. Yet all along both plaintiffs have had a *Stewart*-type cause of action. Viewed properly, far from providing plaintiffs with an additional cause of action, the use of panels provides the Government with a potential defense, if it can show that all reservists were considered by a panel with one or more reservists on it. Thus, the destruction of the records, far from concealing plaintiffs' causes of action, may have deprived the Government of the possibility of proving a defense.

Plaintiff Harper additionally attacks this court's conclusion in *Foster*, 3 Cl.Ct. at 444, that a plaintiff was put on notice of a potential cause of action by the Air Force's announcement in its fact sheets that the boards were composed of colonels (a rank few reservists attain). He argues that a disclosure that there were only two reservists on a board would not have put a "knowledgeable" reservist on notice because he might conclude that he had been evaluated by a five-man panel containing two reservists—an appropriate proportion. The opposite assumption, however—that Harper had been evaluated by a panel containing no reservists at all—would be equally plausible.

Plaintiff Bloom makes no showing of any attempt to discover his cause of action before learning of the defective boards in February 1984. Harper claims to have taken steps to ascertain the reason for his nonselections and to have applied for correction of his military records on the theory that some of his OER's were unfair. Because these actions do not relate to the board composition defect which supports his claim, they do not distinguish Harper's case from *Foster* in relevant particular.

Harper alleges that in the course of these inquiries he received a letter from a superior officer assuring him that the members of both his selection boards were qualified. Motion filed Aug. 1, 1983, Ex. A, ¶ 20. Plaintiff argues that this assurance was false—that the number of regulars who exceeded the proper proportion of regulars on the boards were unqualified. Although ingenious, this argument fails because no one member of either board can be identified as a supernumerary and hence unqualified. In addition, this allegation is supported neither by affidavit nor by the letter itself, which is not alleged to be unavailable. *Barmag Barmer Maschinenfabrik A.G. v. Murata Machinery, Ltd.*, 731 F.2d 831, 836 (Fed.Cir.1984).

Plaintiff Harper also alleges being told by other officers that the Air Force had represented to them that the promotion process was entirely regular; that the fact sheets failed to disclose that 80 percent of reservists were considered by all-regular five-man panels; and that the Air Force wrongly informed a United States Senator and Congressman who inquired on his behalf that he had left active duty voluntarily. The relevance of the last allegation is obscure. The remaining allegations do not indicate that the Air Force impeded plaintiff's access to information concerning the composition of the promotion boards.

Both Bloom and Harper have moved to suspend proceedings in this court while they file applications for relief with the AFBCMR. Plaintiffs do not allege that entry of judgment by this court would prejudice their chances before the AFBCMR. They are not barred from seeking relief there by laches or limitations. Instead, they suggest that a full development of their cases before the board will later be of assistance to this court in deciding the merits of their claims. Because these claims are barred by laches anyway, and will still be barred should proceedings resume in this court, no interest is served by delaying these proceedings.

Finally, plaintiff Harper moves to have transferred to the United States District

Court for the District of Columbia an allegedly separate claim for consideration for promotion under 10 U.S.C. §§ 8360, 8366 (1970). This claim depends on plaintiff's having served the required period as a reserve officer, which, in turn, depends on the success of his suit for reinstatement retroactive to the date of his release. Because this court's determination that the latter claim is barred by laches is binding on the district court, it would not be in the interest of justice, under 28 U.S.C. § 1631 (1982), to transfer the claim for consideration for promotion. *See Goewey v. United States*, 222 Ct.Cl. 104, 612 F.2d 539 (1979) (transfer not in the interest of justice where claim is barred by limitations). Therefore, plaintiff's motion for relief from this court's order requiring him to move for summary judgment on his claim for consideration for promotion is denied.

## CONCLUSION

Based on the foregoing, the Clerk of the Court will dismiss each complaint.[3]

IT IS SO ORDERED.

No costs.

---

3. Any argument made on behalf of plaintiffs not addressed specifically herein has been considered carefully and rejected.