**Billy F. HANKINS, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 519–82C.**

United States Claims Court.

April 5, 1985.

John A. Everhard, Falls Church, Va., for plaintiff.

Joseph T. Casey, Jr., Washington, D.C., with whom were Acting Asst. Atty. Gen. Richard W. Willard and Sara V. Greenberg, Washington, D.C., for defendant.

## OPINION

NETTESHEIM, Judge.

This is the last of more than a score of cases before this court involving the issue of whether laches bars claims of military personnel who challenge their nonselection for promotion by selection boards that were not constituted as required by law when the personnel have reenlisted and thereby obtained the protection of section 205 of the Soldiers' and Sailors' Civil Relief Act of 1940, 54 Stat. 1178, 1181 (codified as amended at 50 U.S.C.App. § 525 (1982)), from this court's six-year statute of limitations. *See Andrews v. United States,* 6 Cl.Ct. 204 (1984), *appeal pending,* No. 85-

617 (Fed.Cir. Oct. 22, 1984); *Foster v. United States,* 3 Cl.Ct. 440 (1983), *aff'd,* 733 F.2d 88 (Fed.Cir.1984).

## FACTS

This particular case comes before the court on defendant's motion for summary judgment, which plaintiff has opposed, *inter alia,* by two declarations averring that defendant frustrated plaintiff's attempts to pursue his remedies. *See Foster,* 3 Cl.Ct. at 443 (citing *Gruca v. United States Steel Corp.,* 495 F.2d 1252, 1260 (3d Cir.1974)). An evidentiary hearing has been conducted.

After approximately twelve years' service as a commissioned officer in the United States Air Force Reserve, plaintiff was released on June 30, 1975, after selection boards convening, respectively, on September 17, 1973, and October 7, 1974, did not select him for promotion to the temporary rank of major. *Stewart v. United States,* 222 Ct.Cl. 42, 611 F.2d 1356 (1979), held that the temporary selection board convened in 1975 did not contain an "appropriate number" of reserve officers, as required by 10 U.S.C. § 266(a) (1970).

Plaintiff's initial declaration, signed on December 8, 1983, recited:

I placed a phone call to Randolph AFB, Texas in mid May 1975, and asked them if there was any review that could be made of my records, or of the promotion board findings that would allow me to ascertain my position among non-selectees. I was told that I could review my OER's, but that facts pertaining to the composition of the board, or information about individual statistics (other than total eligible, total selected and total non-selected) could not be made available. I did not ask any probing questions about board composition, since I was not aware of the importance of it.

Declaration of Billy F. Hankins, Dec. 8, 1983, ¶ 3.

After oral argument the court was not prepared to rule whether plaintiff had made out a genuine issue of material fact that would defeat defendant's summary

judgment motion without affording plaintiff an opportunity to supplement his declaration. Plaintiff's supplemental declaration elaborated to some extent the circumstances under which the information was given, as follows:

Since my RIF notification, I had been considering ways to remedy the situation. I was thinking that if I could ascertain my standing among non-selectees, it might provide a starting point. I was not sure who to contact, so I simply called the Randolph AFB operator and asked what office might give me the information. To the best of my recollection, she connected me with the separations section. I explained to the individual who answered the phone my situation, and he turned me over to an officer. The question I asked and the response were as given in my original statement. I recall that his response was not inconsistent with what I believed to be Air Force policy dealing with promotion board composition and individual standings. It was a belief shared by other officers I knew. Unfortunately, I cannot remember the officers name or his rank.

Declaration of Billy F. Hankins, July 20, 1984.

Sometime later, after delays due to an accident involving plaintiff and health problems experienced by his counsel, plaintiff testified at an evidentiary hearing concerning the efforts he undertook subsequent to his release and reenlistment to identify grounds for overturning his nonselection.

Plaintiff testified that he was advised on approximately January 5, 1975, by his wing commander that he had failed selection for the second time. Plaintiff inquired what he could do about the situation, and at that time was told he could not take legal action. Plaintiff spoke to a legal officer at Little Rock, Arkansas, where he was then stationed, who gave him the same information. At this point plaintiff's efforts were focused on voiding or correcting his Officer Efficiency Reports ("OER's"), the official evaluations of his performance, which form the basic data considered by promotion boards, but, in the words of plaintiff, "[H]aving an OER removed took an act of God practically." Transcript of Hearing, Feb. 15, 1985, at 7 [hereinafter cited as "Tr."].

In mid-May 1975, before plaintiff's scheduled separation on June 30, 1975, he placed the telephone call to Randolph. Plaintiff testified that in mid-May 1975, having "decided that I'd better find out some more information," Tr. at 8, he telephoned the operator at Randolph Air Force Base, the location of the Military Personnel Center, which is the highest authority with respect to personnel actions in the Air Force. The operator advised plaintiff that he should speak to the separations section, and plaintiff was connected with an individual who answered the telephone. Plaintiff identified himself, explained his situation, and was informed that this individual could not answer plaintiff's questions and that plaintiff should talk with the section chief, whose name and rank plaintiff does not specifically recall, but whom he believes to have been a major. Plaintiff intended to ask the individual "a great number of questions relating to the promotion board and to my standings and several things like that." Tr. at 9. However, when plaintiff asked the individual if he could determine his position among the non-selectees, the individual replied, as plaintiff previously averred in his original and supplemental declarations, "that any facts pertaining to the promotion board composition or anything about individual standings, any information concerning the promotion board was not going to be made available, except for such things as I could pick up basically anywhere [such as] the total selected, total non-selected, [and] total eligible." *Id.*

Approximately a week to ten days after the telephone call, plaintiff contacted two attorneys in Little Rock, Arkansas, both of whom were unfamiliar with the law involved in challenges to military personnel actions. After his separation plaintiff reenlisted on December 19, 1975, as a staff sergeant. After six months plaintiff resumed efforts to rectify his situation by

attempting to qualify for positions within the Air Force, which proved unsuccessful because of his passovers, and by attempting to learn of developments bearing on his situation through the *Air Force Times:*

> I followed any information that I could get really. If someone said or the Air Force Times said or someone indicated a person in my situation or something similar to what I'd gone through had either regained restitution or had found some way to find a remedy, then I at least would go to the legal office or perhaps CBPO [the Central Base Personnel Office—the base level counterpart to the Military Personnel Center] or both, to determine what the situation was.

Tr. at 13–14. These efforts proved unavailing, but plaintiff testified that between his date of reenlistment in December 1975, and the filing of his complaint in October 1982, he followed all leads of which he became aware, principally by making telephone calls.

Plaintiff was stationed in England from January 21, 1979, through June 27, 1982. Before his return to the United States, he learned about an individual named Galinky who had achieved an overnight promotion from master sergeant to captain and determined to speak to Galinky. Unfortunately, even though plaintiff acted within a few days, Galinky was transferred before plaintiff had an opportunity to do so. Within a week or two after his return to the United States, plaintiff communicated with a legal reserve officer, who informed him of the *Stewart* decision and gave plaintiff a telephone number to call at the Air Force Reserve Personnel Center in Colorado, which is responsible for administration of reserve personnel and which could ascer-

tain whether the circumstances of plaintiff's nonselection were encompassed within those of *Stewart.* Plaintiff was put into contact with someone whose name he recalls as being Capt. Fiscus or Siscus in the Judge Advocate General's office. Capt. Fiscus corroborated in a circumspect manner that plaintiff's promotion boards were under investigation on the basis of the *Stewart* decision. Plaintiff then learned that another individual had obtained relief on the basis of a similar problem with promotion boards and obtained the name of that person's counsel (who is now plaintiff's counsel), whereupon the complaint was filed.

## DISCUSSION

If plaintiff's testimony is sufficient to create a genuine issue of material fact that precludes summary judgment on the laches defense, and if plaintiff's testimony, having precluded the grant of summary judgment, is deemed sufficient to overcome the laches defense, defendant lacks any defense on the merits to this action, and plaintiff is to recover.[*]

Contrary to defendant's argument, plaintiff's declarations, as bolstered by his testimony, are specific. *See Union Carbide Corp. v. American Can Co.,* 724 F.2d 1567, 1572 (Fed.Cir.1984) (unsupported conclusory expert opinion ignored evidence of record); *Custer v. United States,* 224 Ct.Cl. 140, 148, 622 F.2d 554, 559, *cert. denied,* 449 U.S. 1010, 101 S.Ct. 565, 66 L.Ed.2d 468 (1980) (mere speculation as to existence of facts which might toll limitations insufficient to give rise to genuine issue of material fact). The deficit in plaintiff's testimony is the incompleteness of that which has been recalled. Plaintiff re-

---

[*] Before these cases were transferred to this judge, defendant had filed a similar motion for summary judgment in many of the cases, and counsel for this plaintiff, who also represents other plaintiffs, filed a similar brief in some cases. In the interest of economizing the parties' expenditures of time and resources and of expediting resolution of the cases, it was determined that in cases, such as this, in which plaintiff had not responded to defendant's motion, each plaintiff would file a statement (by

way of affidavit or declaration) specifying in what manner his case differed from the consolidated cases decided under *Foster v. United States,* 3 Cl.Ct. 440, and the court would treat those plaintiffs as having filed an opposition and cross-motion on the same legal grounds that had been briefed in other cases. Thus, although plaintiff has not filed a cross-motion for summary judgment, the court deems the record complete for the purpose of summary judgment.

members that he made the critical telephone conversation in mid-May 1975 and the name of the section of the Military Personnel Center that he reached telephonically. He does not remember the name of the individual with whom he spoke some eight years before he authored his first declaration, although he believes that the rank held was that of major.

After observing plaintiff testify and respond to questions of counsel, as well as those from the court, the court finds that plaintiff testified to the best of his knowledge concerning the substance of the telephone conversation that took place in mid-May 1975. However, a finding that defendant should be charged with having frustrated plaintiff's attempts to obtain information to which he was entitled or otherwise frustrated plaintiff in his pursuit of remedies does not follow automatically from this initial finding as to plaintiff's threshold credibility.

Credibility is perhaps the most important issue assigned to the determination of the fact finder. The substance of plaintiff's testimony is not implausible. In these *Stewart*-type cases, the Air Force has demonstrated inconsistency in following its own announced practices of disclosure. For example, as noted in *Foster v. United States*, 3 Cl.Ct. at 443 n. 5, although as of March 29, 1971, the Air Force adopted a firm policy of releasing the names of board members upon request under the Freedom of Information Act, the fact sheets disseminated for the 1974 promotion board state that the names were considered privileged.

Plaintiff insists that defendant should be able to identify individuals who were in a position to have spoken to plaintiff based on the information plaintiff recalls. Regrettably, the court cannot accede to this view. The policy of laches would be thwarted if a plaintiff could rely on his now-diminished memory eight years after the occurrence of the most critical factual event involved in rebutting defendant's claim of laches and thereby require the Government to come forward with evidence from witnesses with more perfect memories in order to defeat plaintiff's claim.

Although the court determines that plaintiff testified truthfully on the basis of his incomplete recollection of the May 1975 telephone call, it should be pointed out that the information that impeded plaintiff from pursuing inquiries with respect to the composition of his promotion board was gratuitous. Plaintiff did not question the composition of those boards, because he believed that the Air Force, which had no reason to do other than protect his rights, would have assured that each board was composed properly. *See* Tr. at 24. This is not to say that the questions plaintiff asked were too narrow to elicit the response to which he testified. Nor does the court discount plaintiff's testimony that the answer he received prevented him from asking "further probing questions." Tr. at 9. The fact that the answer addressed a topic about which plaintiff had not expressed particular concern, however, makes it less likely that plaintiff's recollection, although believed by him, accurately replicated the substance of the alleged admission. To permit the laches defense to be defeated by testimony so non-specific as to the identity of the officer or agent whose words otherwise would bind defendant, indeed, would be mischievous.

It is therefore found and concluded that plaintiff's testimony is insufficient to charge defendant with conduct that would deprive it of the defense of laches. For the reasons discussed in *Andrews v. United States*, 6 Cl.Ct. 204, and after carefully evaluating the actions plaintiff took between his separation in 1975 and commencement of suit in 1982, the court finds and concludes that plaintiff cannot be excused for the delay in bringing his claim.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment is granted, and the Clerk of the Court shall dismiss the complaint.

IT IS SO ORDERED.

No Costs.