Robert T. MATHIS, Sr.

v.

The UNITED STATES.

No. 231-67.

United States Court of Claims.

Feb. 20, 1970.

Robert T. Mathis, Sr., pro se.

Charles M. Munnecke, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

PER CURIAM.

This case was referred to Trial Commissioner William E. Day with directions to make findings of fact and recommendation for conclusions of law under the order of reference, Rule 57(a) [since September 1, 1969, Rule 134(h)], and the opinion of this court herein, entered June 14, 1968, 394 F.2d 519, 183 Ct. Cl. 150. The commissioner has done so in an opinion and report filed May 12, 1969. Exceptions to the commissioner's opinion, findings and recommended conclusion of law were filed by plaintiff. Defendant urged that the report and recommendation be accepted and the petition dismissed. The case has been submitted to the court on plaintiff's exceptions and the briefs of the parties without oral argument of counsel.

Since the court agrees with the commissioner's opinion, findings and recommended conclusion of law with minor modification, it hereby adopts the same as modified as the basis for its judgment in this case as hereinafter set forth. Therefore, plaintiff is not entitled to recover and his petition is dismissed.

Commissioner DAY'S opinion, with minor modification by the court, is as follows:

This is a military pay case in which the plaintiff alleges in substance that he, as an enlisted man in the Army, was unlawfully discharged from the Army.

On March 15, 1968, the court dismissed plaintiff's petition as not having been filed within 6 years of the plaintiff's discharge from the Army (on September 26, 1960), and was therefore barred by limitations. In its opinion,[1] the court treated a handwritten petition (sent by plaintiff to the court on October 25, 1966, and received a few days later) as the commencement of the plaintiff's action, even though it was not actually filed because the rules of the court had not been followed as to the requisite number of copies.

The plaintiff filed a motion for rehearing to which was appended a copy of a petition addressed to this court, the last page of which (page 23) bears a notarial

1. 391 F.2d 938, 183 Ct.Cl. 145.

certificate dated September 6, 1966, which he says he tried to send to the court from prison. Because this date is within the limitations period (being within 6 years of the date of the plaintiff's discharge from the Army), the court vacated its order dismissing the petition and remanded the case to the trial commissioner for trial or other proceeding limited to the issue of whether the plaintiff attempted to transmit from prison a petition to this court on or before September 26, 1966.[2]

A trial has been held and the plaintiff has had full opportunity to come forward with any evidence he might have to support his statements to the court concerning his attempts to file prior to the limitations date referred to above. The evidence is convincing that not only did the plaintiff not attempt to file a petition prior to September 26, 1966, but also that the plaintiff has used an altered document as evidence in support of his contention.

A prison official, the plaintiff and six individuals (then inmates of the Florida States Prison, each of whom had been a fellow-inmate with plaintiff at the time the latter was also an inmate of that institution) testified. The prison official—Jim Reddish—is (and was during the times herein material) classification supervisor. Part of his duties involved the administering of oaths to inmates desiring notarial certificates on various papers, usually for filing in court.

On February 18, 1963, the Circuit Court of Osceola County, Florida, sentenced the plaintiff to a term of 6 months to 5 years (on a charge of issuing worthless checks) to the Florida State Prison at Raiford, Florida. Plaintiff was an inmate of that institution from some time shortly after sentencing until February 17, 1967, when he was discharged from prison.

It is established from the evidence that whenever an inmate had a paper which he wished to have notarized and mailed to an addressee, the practice which was followed was for the inmate to prepare the paper ready for signature as well as an envelope properly addressed to the addressee. If he had the required postage, he would place it on the envelope. The papers were then handed to Reddish, who took the acknowledgment of the inmate who signed the paper before Reddish, the notary. Reddish would then take the papers back to his office where he would sign the paper and affix his date stamp and seal. The credible proof shows that all papers notarized by Reddish were mailed to the addressee.

Notarial services were always available to the inmates as to any paper addressed to a court or to attorneys. Notarial services were denied (according to prison instructions) in the case where an inmate requested a notarial certificate on a personal letter to a newspaper "for printing in a paper."

In those instances where the inmate did not have postage for mailing papers for which notarial services had been furnished, the prison supplied and affixed the postage. The inmate prepared the envelopes for mailing in all cases, by addressing such envelopes, including return address. In all cases, the mailing was performed by the office staff of Reddish.

In addition to requesting notarial services as described above, inmates often wished to have a personal copy which included the notarial certificate. They were told that this would not be permitted. Although plaintiff, and each inmate who testified, concluded that many papers which had been notarized had not been mailed by the prison, the proof shows that in each case a paper bearing a notarial certificate was presented to the notary, it was mailed by his office. The impression that some papers had not been mailed was founded on the fact that sometimes an expected reply was not received.

There is in evidence a sheath of 61 papers, each of which is a receipt for legal papers which the plaintiff had notarized

2. 394 F.2d 519, 183 Ct.Cl. 150.

and mailed by prison officials at the Florida State Prison at Raiford, Florida. Many of the 61 papers had been addressed to more than one addressee. The period covered is from March 1963 through January 1967. (The plaintiff was discharged from the above-named prison on February 17, 1967.) Among the receipts in the group described above is one dated September 6, 1966, being a receipt from the plaintiff for "Application for Leave to File an Application for a Writ of Mandamus/or Prohibition, mailed this date to" the attorney general of Florida, the chief justice of the Supreme Court of Florida and the Chief Justice of the United States, all with full correct addresses.

The credible proof shows that the paper described above is the only paper which Jim Reddish notarized for the plaintiff on September 6, 1966. The plaintiff introduced in evidence plaintiff's exhibit 2, which is a handwritten complaint addressed to this court. It was never received by the court. This is a 23-page document (referred to earlier as an altered document) written in pencil with the last page bearing a notarial certificate of Jim Reddish dated September 6, 1966. Appended to this document is an affidavit of the plaintiff with a notarial certificate dated May 6, 1966, signed by a different notary. This latter paper does not appear to have any relation to the document to which it is affixed.

A comparison between plaintiff's exhibit 2 and the handwritten complaint which the plaintiff actually sent to and was received by the clerk of this court, dated October 25, 1966, is revealing. The latter document was sent to the court with a letter of transmittal of the same date, an affidavit authorizing appointment of an attorney, a motion for leave to file a cause of action, a pauper's affidavit, and a motion for appointment of counsel to prosecute the claim, each of which was signed by the plaintiff, and notarized by Jim Reddish on October 25, 1966. The complaint itself was 23 pages in length. On the 23rd page, the plaintiff signed a proof of service and the document was notarized by Jim Reddish on October 25, 1966. Appended to all of the above documents was a 5-page affidavit of the plaintiff, also notarized by Reddish on the same date. A number of exhibits were also appended. These are identified as exhibits 1, $1^1$, 2, 3, $3^1$, $3^2$ and 4. All are original letters addressed to the plaintiff, except exhibit $1^1$, which is a copy of a letter to the plaintiff.

Plaintiff's exhibit 2 (apart from the difference in attached exhibits) is almost but not entirely a word-for-word replica of the October 25 document. The bold black-lettered word "Conclusion" which appears on page 21 of the latter, was omitted from exhibit 2. Both pages 22 (which includes the prayer for relief) read the same, except that the four last lines which appear on exhibit 2 were not included in the October 25 complaint. The 23rd page of exhibit 2 does not fit in with the concluding portions of the plaintiff's complaint. It is regarded as significant that on 22 pages of the complaint in exhibit 2 (the September 6, 1966 version) the plaintiff refers to himself as plaintiff 159 times (an average of more than 7 times per page). On page 23, however, he refers to himself as petitioner 3 times; not once as plaintiff. It is concluded that prior to the filing of the petition for rehearing, the plaintiff recopied the words of the complaint which he had sent to the court on October 25, 1966, altering page 21 by omitting the word "conclusion," altering the substance of page 22 by adding four additional unrelated lines, and then adding the last page of a legal paper having a September 6, 1966 notarization to make it appear that he had attempted to mail the complaint earlier than the limitations date of September 26, 1966.

The record shows that the inmates of the Florida State Prison (and the plaintiff) testified that in order to obtain a copy of a paper that had been notarized, they would make several originals of a paper addressed to a court and furnish the prison authorities the name and address of a wrong court or an unsolicited

lawyer so that upon receipt by the addressee, or delivery to an unsolicited lawyer, the paper might be returned to the sender. It is concluded that one of the sets of paper which the plaintiff requested Jim Reddish to notarize and mail to three addressees on September 6, 1966, was returned to the plaintiff in the manner described above, which accounts for the plaintiff's possession of that paper with the notarial certificate of that date. It is, accordingly, found that the plaintiff did not attempt to mail a complaint to this court prior to September 26, 1966. The plaintiff's petition should, therefore, be dismissed as barred by limitations.