**Harold H. WEBB, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 222–87C.**

United States Claims Court.

Aug. 16, 1990.

William J. Hanger, Clarksville, Ind., for plaintiff; Hanger, Engebretson, Mayer & Vogt, of counsel.

John S. Groat, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant; David M. Cohen, Director, of counsel.

## OPINION

FUTEY, Judge.

This military pay case is before the court on defendant's motion for judgment on the pleadings. Plaintiff claims $44,189.39 for back pay and allowances for the period December 1, 1950 through February 1, 1954, while he was held first as a prisoner of war by the Korean government and then by the Neutral Nations Repatriation Commission. Defendant asserts that 33 years after the cause of action accrued, the equitable doctrine of laches bars plaintiff's claim.

### Factual Background

In 1949, at age 18, plaintiff enlisted in the United States Army. His unit was ordered to Korea where it arrived in August 1950, and immediately went into action. Plaintiff was captured by Chinese forces in December 1950, and for the next 3 years was a prisoner of war. Plaintiff's dossier [1] illustrates that while he was a prisoner of war, plaintiff acted with disloyalty to the United States (U.S.); however,

no existing record indicates that he was formally court-martialed. Plaintiff's fellow prisoners claimed that he informed on them, "wrote propaganda articles, made communist propaganda posters, circulated petitions, made propaganda broadcast recordings, and became a member of the [so-called] 'Kremlin Club'. His rewards included elevation to the post of camp librarian."

When the Armistice was signed in 1953, plaintiff refused to be repatriated with other American prisoners of war, to protest against U.S. involvement in the war. He allegedly wanted to go home but did not believe he could criticize U.S. policy and work for peace "in McCarthy's America". Instead, he requested that he be turned over to the Neutral Nations Repatriation Commission (NNRC). In February 1954, plaintiff was released from the commission and elected not to return to the U.S. Instead he went to China, where he spent the next 6 years. While living in China, plaintiff met a Polish woman to whom he became engaged. In 1960, he travelled to Poland and married her. In 1968, he divorced her and in the same year married another Polish citizen by whom he has two children. From 1970 to 1985, he continued to live in Poland. Plaintiff remained overseas until he accepted an invitation from his sister to visit her in the U.S. in July 1985.

After returning to the U.S., he chose to remain. However, the Department of State decided on June 18, 1986, that plaintiff had expatriated himself because he acquired Polish nationality by naturalization. Plaintiff appealed the decision, and after a hearing before the Board of Appellate Review of the Department of State in February 1988, it was determined that plaintiff had not expatriated himself when he obtained naturalization in Poland.

---

1. The record before the court, "consisting of 310 pages, contain[s] Volumes I through VI of extracts from [plaintiff's] dossier # C8054912.... [These] are declassified copies of witness statements from fellow POWs, correspondence from Mr. Webb and other American POWs who refused repatriation, transcripts of propaganda broadcasts by Mr. Webb, Army court-martial charges, specifications, and legal brief prepared in anticipation of trial and other documents related to Mr. Webb's conduct while a POW." Declaration of Major Robert C. McFetridge, paragraph 3, appendix to Defendant's Status Report and Motion for Leave to File Documents.

On September 24, 1986, plaintiff's attorney requested the Secretary of the Army to pay plaintiff for the period December 1, 1950 through February 1, 1954, during which time he was not paid. The request was forwarded to the National Personnel Records Center which in turn advised plaintiff's attorney that plaintiff should contact the Foreign Claims Settlement Commission [2] because the Center had no authority to determine pay and allowance. The Foreign Claims Settlement Commission could offer no assistance because it had no authority with respect to plaintiff's back military pay claim and the period for filing congressional entitlement claims for Korean conflict POW's expired on August 21, 1956. On January 6, 1987, in response to a letter from plaintiff's attorney, the Office of Retired/Veterans Affairs said that their office had no authority to settle the claim.

Plaintiff filed suit in this court on April 20, 1987. On December 11, 1987, defendant filed a motion to dismiss the complaint for lack of jurisdiction because the plaintiff failed to allege that he is a citizen of the United States. Plaintiff filed an amended complaint on June 7, 1988, after the Board of Appellate Review of the Department of State rendered a decision that plaintiff was still a U.S. citizen. Oral argument was held on defendant's motion for judgment on the pleadings on August 21, 1989. On January 22, 1990, defendant filed a status report and advised the court that the United States Army Intelligence & Security Command, Ft. Meade, Maryland, has located approximately 3,000 pages of documents which may relate to plaintiff's actions as a prisoner of war (POW); that many of these documents are classified; and that they are under review by the Army. Requesting time to review the documents, 3 days later defendant filed a motion to stay proceedings to March 26, 1990, which was granted. On March 27, 1990, defendant filed a status report and motion for leave to file "one copy of recently declassified documents pertaining to plaintiff's actions as a prisoner of war." On April 12, 1990, plaintiff filed an opposition to defendant's motion for leave to file documents and defendant replied on April 23, 1990. Defendant's motion was allowed on April 25, 1990 and the documents were filed on July 10, 1990.

In support of its Motion for Judgment on the Pleadings, defendant argues that "the unreasonable delay in instituting this action has unreasonably prejudiced its potential defense of the case" and, therefore, the equitable doctrine of laches bars plaintiff's complaint. Plaintiff responds, that since he has not been formally courtmartialed, under the authority of *Bell v. United States*, 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961), there is no possible defense and he is entitled to recover.

### Discussion

This case may be ripe for disposition by a motion for judgment on the pleadings because all of the material facts are stipulated to by the parties (RUSCC 12(c); *Johns–Manville Corp. v. United States*, 12 Cl.Ct. 1, 14–15 (1987). Nevertheless, the court must first review its jurisdiction.

### Statute of Limitations and the "Beyond the Seas" Tolling Provision

Plaintiff alleges jurisdiction under the Tucker Act which provides the Claims Court with jurisdiction to hear claims against the government founded "... upon ... any Act of Congress...." 28 U.S.C. § 1491(a)(1) (1988). Plaintiff claims recovery under 37 U.S.C. § 552 (1988) which states in pertinent part:

**Pay and allowances; continuance while in a missing status; limitations**

(a) A member of a uniformed service who is on active duty or performing inactive-duty training, and who is in a missing status, is—

(1) for the period he is in that status, entitled to receive or have credited to his account the same pay and allowances, as defined in this chapter, to which he was entitled at the beginning

---

**2.** The Foreign Claims Settlement Commission (FCSC) is a quasi-judicial agency which determines claims of United States (U.S.) nationals for loss of property in foreign countries. *See* 22 U.S.C. § 1623 (1988). In addition, the FCSC handles claims by American prisoners of war for entitlement provided by Congress. *See* 50 U.S.C.App. § 2005 (1988).

of that period or may thereafter become entitled....

The threshold issue, which the court raises on its own, is the jurisdiction of this court to hear plaintiff's complaint. "The court is obligated to determine whether it has jurisdiction over pending cases regardless of whether the issue has been raised by the parties." *Skirlick v. United States,* 17 Cl.Ct. 735, 737 (1989), citing *Hambsch v. United States,* 857 F.2d 763, 764–65 (Fed. Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1969, 104 L.Ed.2d 437 (1989). It is undisputed that plaintiff's claim accrued in 1954, approximately 33 years before he filed his complaint in this court. This case raises two issues:

(1) Whether the statute of limitations bars plaintiff's claim?

(2) If so, does plaintiff, who voluntarily chose not to return to the U.S. for 30 years, qualify for the "beyond the seas" tolling provision?

 The applicable statute of limitations dictates that the Claims Court does not have jurisdiction to hear any claim which was not filed within 6 years after such a claim first accrued. 28 U.S.C. § 2501 (1988). This statute is jurisdictional. *Farrell v. United States,* 9 Cl.Ct. 757, 758, 759 (1986). The statute of limitations cannot be waived by the court. *Todd v. United States,* 155 Ct.Cl. 87, 93, 292 F.2d 841 (1961). A claim first accrues when all the events have occurred which fix the alleged liability of the U.S. and entitle the claimant to institute the action. *Japanese War Notes Claimants Ass'n v. United States,* 178 Ct.Cl. 630, 632, 373 F.2d 356 (1967), *cert. denied,* 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967), *reh'g denied,* 390 U.S. 975, 88 S.Ct. 1020, 19 L.Ed.2d 1192 (1968). Therefore, plaintiff's claim is barred by § 2501 because it has been substantially over 6 years since the claim first accrued unless the "beyond the seas" provision is applicable:

[A] petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases.

28 U.S.C. § 2501 (1988).

Legal history indicates the creation of this tolling provision in 1863. The parties have not provided any law on this subject.[3] A recent case, *Brown v. United States,* 5 Cl.Ct. 1, *aff'd,* 741 F.2d 1374 (Fed.Cir.1984), interpreted the tolling as ceasing when the plaintiff returned to the U.S. for a vacation. Similarly, in *Smuck v. United States,* 5 Cl.Ct. 94 (1984), the tolling effect was terminated by the former officer's reentry into the U.S. for a brief stay. These cases suggest that the statute should be tolled since plaintiff was at all times an American citizen and was continuously and literally "beyond the seas" for 30 years. It is not a court's *sole* duty to apply the literal letter of the law. The United States Supreme Court states:

It is a case where there was presented a definite evil, in view of which the legislature used general terms with the purpose of reaching all phases of that evil, and *thereafter, unexpectedly, it is developed that the general language thus employed is broad enough to reach cases and acts which the whole history and life of the country affirm could not have been intentionally legislated against. It is the duty of the courts,* under those circumstances, *to say that,* however broad the language of the statute may be, *the act,* although within the letter, *is not within the intention of the legislature, and therefore cannot be within the statute.* [Emphasis added.]

*Church of the Holy Trinity v. United States,* 143 U.S. 457, 472, 12 S.Ct. 511, 516–17, 36 L.Ed. 226 (1892). Cited with approval by *Anderson v. United States,* 16 Cl.Ct. 530, 540–41 (1989).

---

**3.** Defendant explains: "I think that we haven't raised it ['beyond the seas' exception] advisedly, on the basis that we didn't see sufficient information in the papers that were placed before

the Court by the Plaintiff to allow us to argue that he was a fugitive in flight, not entitled to the beyond the seas exception. That's why we refrained from doing it." Transcript (tr.) at 9.

The application of the plain language of the "beyond the seas" provision creates an indefinite tolling provision; for as long as a claimant is beyond the seas, for whatever reason, the statute tolls. The court must reconcile this reading with Congress's intention not to allow any tolling provision to be controlled by a claimant's voluntary conduct. Consequently, the court must judicially construct the "beyond the seas" exception. Our analysis focuses on the purpose of the statute; the reason why a party is beyond the seas and the underlying responsibility of a claimant to timely present his claim against the U.S. due to the narrow waiver of sovereign immunity embodied in 28 U.S.C. § 2501.

The "beyond the seas" provision understandably could have been valuable in those bygone days of transoceanic sailing ships when communication was bad and a claimant would have had difficulty in timely registering his complaint from overseas. In the second half of the twentieth century, however, it is absurd for plaintiff to say that while he was voluntarily out of the country he could not timely pursue his claim. As the facts show, at all times after his claim accrued, the courts were open and he could have presented a claim by mail to the Army or the court.

In February 1954, plaintiff was released from the commission and elected not to return to the U.S. At that time, his claim for back pay accrued. It is to be presumed that plaintiff was then aware that he had not been paid for the years while he was a POW and he could have filed his claim at that point. Nothing in the record indicates otherwise. Thus, he could have filed his claim either overseas by mail, or by returning to the U.S. and filing here. But he elected not to assert his claim. Not only that, but according to his own admissions, plaintiff chose not to associate himself with the U.S. He stayed in China for the next 6

years. Although the U.S. did not have a friendly relationship with China during those years, the two countries were not at war with one another. Plaintiff had access to the courts. Consequently, while he was in China the statute ran. *See Soriano v. United States*, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957); *Compania Maritima v. United States*, 136 Ct.Cl. 697, 145 F.Supp. 935 (1956). Furthermore, assuming that the statute had not yet run out while plaintiff was in China, at the very least, when in Poland, he could have made inquiries at the American Consulate at Krakow. Plaintiff claims his fear of apprehension is the reason he did not approach this Consulate.[4] Aside from whether this fear is relevant for statute of limitations purposes, this statement is unsupported by the record because the Department of State Board of Appellate Review found in its opinion that "there is not a scintilla of evidence that appellant made the slightest attempt, either directly or through an intermediary, to find out what his position would be if he were to return to the United States." Under these facts, plaintiff does not fall within the exception.

Furthermore, plaintiff was not operating under a "legal disability." Historically, persons subject to a "legal disability" which would toll a statute of limitations were married women, persons under 21 years, sufficiently mentally impaired people, and persons beyond the seas. *Marcos v. United States*, 122 Ct.Cl. 644 n. 1, 102 F.Supp. 547, *reh'g denied*, 122 Ct.Cl. 641, 106 F.Supp. 172 (1952), *partially overruled on other grounds* by *Compania Maritima*, 136 Ct.Cl. at 697, 145 F.Supp. 935. Plaintiff was not under a "legal disability" at the time his claim accrued, which was upon his release from POW status. Even if living in Communist China during the mid to late 1950's can be construed as a

---

4. Plaintiff's counsel explains:

 [W]hen he was in Poland, as the facts indicate, he was under a lot of stress. His family and he were in fear of danger for their lives at certain points in time.

 \* \* \* \* \* \*

 [H]e was not only in fear of his own life but in fear of that of his family to the point that

he was advised to seek Polish citizenship. And that caused him a great deal of difficulty. It was done under duress. But at that point ... I think there was an extreme fear on his part to associate himself at all, being in that country, with filing a potential claim in this country alleging his citizenship. Tr. at 14–15.

"legal disability", which we do not, plaintiff could have instituted suit upon leaving China or while living in Poland. Plaintiff argues that his concern for apprehension by American authorities is why he did not press his claim.[5] Other reasons include: Stress, marriage, divorce, children, living in Poland, harassment from Polish authorities, and fear. All of these concerns, while emotionally weighty, are irrelevant for statute of limitations purposes because they do not fit into any of the tolling provisions. The Claims Court has no authority to fashion another "legal disability" from those listed by plaintiff or from sickness, surprise or inevitable accident, even though these might prevent a claimant from suing within the time prescribed. *Soriano v. United States*, 352 U.S. at 273, 77 S.Ct. at 271–72. "Hardship, inconvenience, or ignorance are not grounds for tolling the statute." *Goewey v. United States*, 222 Ct.Cl. 104, 112, 612 F.2d 539 (1979), citing *Frith v. United States*, 218 Ct.Cl. 725, 590 F.2d 343, (1978). Furthermore, plaintiff has not alleged mental incapacity, inability to manage his own affairs, a lack of capacity to make a will or enter into a contract. In any event, the law presumes sanity and competency rather than insanity and incompetency. *Goewey, id.* Thus, plaintiff has no excuses.

 Nothing in the statute or its legislative history indicates that Congress intended a claimant to control the tolling provisions. A holding to the contrary would allow plaintiff to institute suit whenever he voluntarily chose to return to the U.S., regardless of whether the statute of limitations on his claim had run. This control undermines the stringent policy behind the statute. *Hart v. United States*, 910 F.2d 815, 818 (Fed.Cir.1990). "The purpose of the Statute of Limitations is to bar stale claims which a party has been lax in asserting...." *Marcos*, 122 Ct.Cl. at 645. The court must be mindful of its duty that the tolling of the statute of limitations is a judicial interpretation of a legislative enactment and should therefore be approached

in a strict and narrow manner. *Welcker v. United States*, 752 F.2d 1577, 1580, *cert. denied*, 474 U.S. 826, 106 S.Ct. 83, 88 L.Ed.2d 68 (985). Limitations upon which the government consents to be sued must be strictly observed. *Soriano*, 352 U.S. at 276, 77 S.Ct. at 273. Consequently, the holding by the United States Supreme Court in *Soriano* is equally apt here: "[I]t would be a limitless extension of the period of limitation that Congress expressly provided for the prosecution of claims against the Government in the Court of Claims. This we cannot do." *Soriano*, 352 U.S. at 275, 77 S.Ct. at 273. Therefore, plaintiff's claim has not been tolled; it has expired.

Unfortunately for plaintiff, an otherwise relevant and supporting case, *Bell v. United States*, 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961), does not toll 28 U.S.C. § 2501. In *Bell*, a soldier, who had been a POW in Korea, sought back pay and allowances for the time he was a captive. While in the prison camp, he acted with utter disloyalty to his fellow soldiers and after the Korean Armistice in 1955, he refused repatriation and went to Communist China. In 1955, he requested back pay. The Court of Claims denied recovery and said "to allow recovery in these cases would be to put a premium on dishonor and a penalty on courageous loyalty." *Bell v. United States*, 149 Ct.Cl. 248, 258, 181 F.Supp. 668 (1960). The Supreme Court suggested that "it is open to serious question whether the conduct of the prisoners after their capture could conceivably have been determined to be tantamount either to desertion or absence without leave." *Bell*, 366 U.S. at 412, 81 S.Ct. at 1241. Accordingly, the Court reversed and held that the soldier was entitled to accrued pay because no official administrative determination was made that he was not in active service or that he was absent from his post of duty. "If a soldier's conduct falls below a specified level he is subject to discipline, and his punishment may include the forfeiture of future but not of accrued pay. But a sol-

---

5. In its latter pleadings, defendant mentions a self-styled "fugitive from justice" exception to the "beyond the seas" tolling provision. *See* n. 3

*supra*. Based on the court's disposition, we need not entertain this contention.

dier who had not received such a punishment from a duly constituted court-martial is entitled to the statutory pay allowances of his grade and status, however ignoble a soldier he may be." *Id.* at 401–02, 81 S.Ct. at 1235.

If not for the fatal statute of limitations problem, *Bell* suggests that plaintiff may have a claim. However, *Bell* does not toll the statute of limitations. We hold that the bell has tolled for this claim many years ago. As a result, this court does not have jurisdiction over plaintiff's complaint.

Due to the disposition on the above grounds, the court need not entertain defendant's laches argument.

### Conclusion

For the above reasons, the court finds that it has no subject matter jurisdiction over plaintiff's complaint. The Clerk is directed to enter judgment dismissing the complaint without prejudice. No costs.