Norman E. MAI, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 90–472C.

United States Claims Court.

March 12, 1991.

Guy J. Ferrante, Falls Church, Va., for plaintiff.

John S. Groat, Washington, D.C., with whom were Asst. Atty. Gen. Stuart M. Gerson, Director David M. Cohen and Asst. Director Mary Mitchelson, for defendant. Major Alice Kottmyer, Dept. of Air Force, of counsel.

## OPINION

LYDON, Senior Judge:

This military pay case is before the court on defendant's motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted, which plaintiff opposes. Both parties have also moved for summary judgment. Plaintiff Norman E. Mai (Mai), a retired U.S. Air Force captain, seeks back pay and allowances from May

31, 1976, the date of his involuntary separation from active duty as a Reserve officer in the Air Force, to October 1, 1984, the date he voluntarily retired from active duty after he subsequently reenlisted in the Air Force.

Mai was involuntarily discharged from the Air Force Reserves as a captain after twice being passed over for promotion to major by two successive promotion selection boards in 1974 and 1975. The complaint challenges the decision of the Air Force correction board upholding his discharge. Mai claims that his discharge was illegal because each of the promotion selection boards included only one Reserve officer, which plaintiff alleges is not an "appropriate number" of Reserve officers, within the meaning of 10 U.S.C. § 266(a) as it stood before amendment in 1981. Defendant argues that the amended version of 10 U.S.C. § 266(a), which now provides that each selection board shall include "at least one" Reserve officer, should be retroactively applied in determining the legality of plaintiff's 1976 discharge. In addition, defendant maintains that the doctrine of laches bars plaintiff's claim, on the ground that plaintiff's unreasonable delay in pursuing his claim has prejudiced the government. After careful consideration of the parties' submissions, oral argument having been held on February 28, 1991, the court grants plaintiff's motion for summary judgment.

## FACTS

The following facts are not in dispute. Plaintiff Mai was commissioned a Reserve officer in the Air Force and he entered on active duty as a second lieutenant on August 13, 1964. In 1974 and again in 1975, Mai was passed over for promotion to major by two successive promotion selection boards. Each board included only one Reserve officer among its total membership. On May 31, 1976, Mai was involuntarily released from active duty in the grade of captain because he was twice passed over for promotion.[1] On August 22, 1976, Mai

---

**1.** By statute, a Reserve officer in the Air Force who is twice passed over for promotion to the next highest grade must retire or be honorably discharged. 10 U.S.C. §§ 8368, 8846 (1976). At oral argument, counsel for plaintiff explained that plaintiff was discharged in 1976 because he

enlisted in the Air Force and served continuously until his voluntary retirement on October 1, 1984.

On October 22, 1985, over nine years after plaintiff's involuntary discharge, plaintiff applied to the Air Force Board for Correction of Military Records (AFBCMR or correction board) to challenge the composition of the two promotion selection boards as not including an "appropriate number" of Reserve officers, in violation of 10 U.S.C. § 266(a), and seeking retroactive reinstatement to active duty and back pay. On April 24, 1989, the AFBCMR rejected plaintiff's application as untimely, but concluded that, "notwithstanding the perceived flaws in the board composition," plaintiff "received a full and fair consideration for promotion on both occasions." [2]

Plaintiff filed suit in this court on June 1, 1990, challenging the AFBCMR's decision as arbitrary, capricious, contrary to law, and unsupported by the evidence. On July 31, 1990, defendant moved to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. Plaintiff responded by opposing defendant's motion and by moving for summary judgment on September 13, 1990. Defendant cross-moved for summary judgment on December 6, 1990.

## DISCUSSION

### A. No Retroactive Application of Statute

■ As set forth in its motion to dismiss, defendant's position is that the amended version of 10 U.S.C. § 266(a), which became effective in 1981, should be applied retroactively to determine whether the promotion selection boards were properly constituted when they evaluated plaintiff for promotion in 1974 and 1975. Defendant urges the court to evaluate the legality of plaintiff's involuntary release from active duty by retroactively applying 10 U.S.C. § 266(a), as amended in 1981, rather than

applying the provision as it stood in 1974 and 1975 when the promotion boards made their decisions.

Before its amendment in 1981, section 266(a) provided: "Each board convened for the ... promotion, ... involuntary release from active duty, discharge or retirement of Reserves shall include an appropriate number of Reserves, as prescribed by the Secretary concerned under standards and policies prescribed by the Secretary of Defense."

As amended in 1981, section 266(a) now provides that each selection board "shall include at least one member of the Reserves, with the exact number of Reserves determined by the Secretary concerned in his discretion."

The government argues that the 1981 amendment to section 266(a) is curative or remedial legislation, and it should be retroactively applied by the court in determining the legality of plaintiff's involuntary release from active duty, citing, *inter alia, Bradley v. School Board of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) ("a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary"). However, the Federal Circuit recently rejected this retroactivity argument with regard to section 266(a) in *Sargisson v. United States,* 913 F.2d 918 (Fed.Cir. 1990). "'Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.'" *Sargisson, supra,* 913 F.2d at 922 (quoting *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988)). Though the Federal Circuit recognized the "irreconcilable conflict" between *Bowen* and *Bradley,* the court chose to

---

did not have enough years of service at that time to retire. Upon his discharge, plaintiff reenlisted in the Air Force and retired in 1984 in the grade of captain after accumulating twenty years of service.

2. By statute, applications for correction of military records must be filed within three years after the alleged error or injustice was discovered. However, the correction board may excuse a failure to file within three years "in the interest of justice." 10 U.S.C. § 1552.

follow the rule articulated in *Bowen* that retroactivity is not presumed. *Sargisson, supra*, 913 F.2d at 922–23. The court concluded that "[t]here is no indication in the language of the amendment to section 266(a) or its background that Congress intended that it apply to boards convened before its effective date." *Sargisson, supra*, 913 F.2d at 923.

In light of *Sargisson*, the court finds no merit in defendant's argument that section 266(a) should be applied retroactively to determine the legality of plaintiff's discharge. Without more, plaintiff is entitled to recover on his claim.

*Sargisson* was issued on August 31, 1990, one month after defendant in this case moved to dismiss Mai's complaint on retroactivity grounds. Recognizing that *Sargisson* rejected the retroactivity argument, the government in the present case subsequently responded to plaintiff's motion for summary judgment by cross-moving for summary judgment on the basis of laches. The court agrees with the parties that no material facts are in dispute, and that summary judgment is appropriate under the circumstances. In addition, consideration of possible jurisdictional defects in the complaint is warranted.

B. Laches

*1. Preliminary Considerations*

■ At first glance it might appear that plaintiff's complaint is time-barred by 28 U.S.C. § 2501, the six-year statute of limitations applicable to claims against the government brought in this court. Section 2501 "dictates that the Claims Court does not have jurisdiction to hear any claim which was not filed within six years after such a claim first accrued. This statute is jurisdictional." *Webb v. United States*, 21 Cl.Ct. 137, 140 (1990). The court has recognized that the "six-year statute of limitations has long been strictly adhered to in military pay cases." *Waldorf v. United States*, 8 Cl.Ct. 321, 323 (1985). In *Kirby v. United States*, 201 Ct.Cl. 527, 539 (1973), *cert. denied*, 417 U.S. 919, 94 S.Ct. 2626, 41

L.Ed.2d 224 (1974), the court articulated the rationale for strict adherence to the six-year limitations period in military pay cases: "the statute of limitations is jurisdictional and must be strictly construed to avoid prosecution of stale claims which defendant can be prejudiced in contesting because excessive lapse of time dulls memories, accounts for missing witnesses, and occasions periodic, routine destruction of Government records." *But see Irwin v. Veterans Administration*, — U.S. —, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (equitable tolling of statute of limitations against government).

As the court noted in *Webb, supra*, our six-year statute of limitations deprives the court of jurisdiction over any claim accruing more than six years prior to the filing of the claim in this court. "A claim first accrues when all the events have occurred which fix the alleged liability of the United States and entitle the claimant to institute an action." *Japanese War Notes Claimants Ass'n v. United States*, 178 Ct.Cl. 630, 632, 373 F.2d 356, *cert. denied*, 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967). Moreover, it is well-established "that a cause of action for back pay and allowances based on an alleged unlawful military discharge first accrues, and accrues all at once, on the date of discharge." *Huntzinger v. United States*, 9 Cl.Ct. 90, 94 (1985), *aff'd*, 809 F.2d 787 (Fed.Cir.1986), *cert. denied*, 483 U.S. 1022, 107 S.Ct. 3267, 97 L.Ed.2d 766 (1987). *See also Bonen v. United States*, 229 Ct.Cl. 144, 148, 666 F.2d 536, 539 (1981), *cert. denied*, 456 U.S. 991, 102 S.Ct. 2273, 73 L.Ed.2d 1286 (1982); *Kirby, supra*, 201 Ct.Cl. at 531.

In this case, Mai's claim, which is based on his involuntary release from active duty, accrued on the date of his involuntary release, May 31, 1976. Thus, plaintiff's claim accrued more than fourteen years before he filed suit in this court. Accordingly, plaintiff's claim would be time-barred by our six-year statute of limitations were it not for the operation of 50 U.S.C.App. § 525 (1988).[3] This provision of the Sol-

**3.** Section 525 of the Soldiers' and Sailors' Civil Relief Act provides, in pertinent part:

diers' and Sailors' Civil Relief Act tolls the statute of limitations for a service member's "period of military service ... for the bringing of any action in any court...." *See Cornetta v. United States,* 851 F.2d 1372, 1378 (Fed.Cir.1988). Therefore, the statute of limitations is tolled by Mai's enlistment and service in the Air Force subsequent to his involuntary release. Approximately two months and three weeks elapsed between plaintiff's involuntary release on May 31, 1976, and his subsequent enlistment on August 22, 1976, during which time the limitations period was running. The limitations period was tolled between August 22, 1976, the date of plaintiff's enlistment in the Air Force, and October 1, 1984, when plaintiff voluntarily retired from the Air Force. From plaintiff's retirement date, he had approximately five years, nine months and one week left in the limitations period to file his claim in this court. Plaintiff filed suit in this court on June 1, 1990, approximately five weeks before the expiration of the six-year statute of limitations. Accordingly, there is no jurisdictional defect in plaintiff's complaint attributable to the statute of limitations.

### 2. Other Considerations

■ The Claims Court and its predecessor the Court of Claims have traditionally applied the equitable doctrine of laches "to promote the vigilant pursuit of those claims ripe for adjudication and, in turn, by barring the claims of those who 'slumber' on their rights." *Yerxa v. United States,* 11 Cl.Ct. 110, 115 (1986), *aff'd,* 824 F.2d 978

(Fed.Cir.1987). The government argues in its motion for summary judgment that plaintiff's complaint may be subject to dismissal based on the affirmative defense of laches. Generally, for the purposes of applying the laches doctrine, as well as the statute of limitations, a claim from back pay accrues at the time of a claimant's separation from the service. *Yerxa, supra,* 11 Cl.Ct. at 116 (citing *Brundage v. United States,* 205 Ct.Cl. 502, 507, 504 F.2d 1382, 1386 (1974), *cert. denied,* 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975)).

■ For Mai, this means his claim accrued no later than May 31, 1976, the date of his involuntary discharge. Unlike the statute of limitations, however, section 525 of the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C.App. § 525, "does not suspend time to be considered in the laches calculation." *Cornetta, supra,* 851 F.2d at 1378. Accordingly, Mai has delayed over fourteen years from the date of his involuntary discharge before filing suit to challenge his discharge in this court on June 1, 1990. Moreover, plaintiff waited over nine years before filing an administrative claim with the AFBCMR on October 22, 1985 to challenge his involuntary discharge.

■ On April 24, 1989, the correction board found plaintiff's discharge challenge to be untimely under its three-year statute of limitations, 10 U.S.C. § 1552, but concluded nonetheless that Mai "received a full and fair consideration for promotion on both occasions notwithstanding the perceived flaws in the board composition." [4]

---

The period of military service shall not be included in computing any period now or hereafter to be limited by any law, regulation, or order for the bringing of any action or proceeding in any court, board, bureau, commission, department, or other agency of government by or against any person in military service or by or against his heirs, executors, administrators, or assigns, whether such cause of action or the right or privilege to institute such action or proceeding shall have accrued prior to or during the period of such service....

50 U.S.C.App. § 525.

**4.** The correction board found Mai's claim was untimely because it was not filed within three years after the alleged error or injustice was

discovered, or reasonably could have been discovered, pursuant to 10 U.S.C. § 1552. The correction board believed plaintiff could have discovered the essential facts of his claim no later than the date of the *Stewart* decision in 1979, in which the Court of Claims found that one Reserve officer on a promotion board was not an "appropriate number" under 10 U.S.C. § 266(a), but the court did not enter final judgment in *Stewart* at that time because the case was remanded to the correction board to consider the Reserve representation issue. *Stewart v. United States,* 222 Ct.Cl. 42, 52, 611 F.2d 1356, 1360 (1979). Moreover, in the present case, the correction board concluded that the tolling provision of the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C.App. § 525, did not apply to the

Application to corrections boards are optional, not mandatory, however. *Mathis v. United States,* 183 Ct.Cl. 145, 148, 391 F.2d 938, 939 (1968), *aff'd on rehearing,* 190 Ct.Cl. 925, 421 F.2d 703 (1970). Plaintiff could have filed suit challenging his involuntary release directly in this court without first applying to the AFBCMR, and thus he cannot for this reason excuse his delay in filing suit in this court.

The court agrees with plaintiff that the time period for calculating his delay should not extend beyond October 22, 1985, the date he filed his administrative claim before the Correction Board. Thus, plaintiff's delay in filing his discharge claim amounts to just over nine years and four months. However, the court must also consider, as part of the laches determination, whether the government has been prejudiced by plaintiff's delay.

In a rehearing *en banc,* the Federal Circuit in *Cornetta* reexamined, clarified and narrowed the doctrine of laches in the military pay arena. " 'The doctrine of laches,' " explained the court, " 'is based upon grounds of public policy, which require for the peace of society the discouragement of stale claims.' " *Cornetta, supra,* 851 F.2d at 1376 (quoting *Mackall v. Casilear,* 137 U.S. 556, 566, 11 S.Ct. 178, 181, 34 L.Ed. 776 (1890)). In *Cornetta,* the claimant delayed nearly seven years before filing suit for wrongful discharge from the military. The Federal Circuit rejected a presumption developed by prior case law that a long period of delay by the claimant is prejudicial to the government. *Cornetta, supra,* 851 F.2d at 1378. The court emphasized that laches has two elements: unreasonable and unexcused delay by the claimant, and prejudice to the government. *Cornetta, supra,* 851 F.2d at 1378. Since laches is an affirmative defense, the court reasoned, the burden of proving prejudice lies with the government. *Cornetta, supra,* 851 F.2d at 1380. The court found the claimant's delay of nearly seven years before filing suit was not presumptively prejudicial to the government.

correction board's three-year statute of limita-

■ As a result of *Cornetta,* the government must now show that the claimant's unreasonable delay has resulted in undue prejudice to the government, either "defense prejudice" or "economic prejudice." "Defense prejudice" can be established by showing loss of records, destruction of evidence, fading memories or unavailable witnesses. "Economic prejudice" focuses on monetary consequences to the government if the claimant prevails. *Cornetta, supra,* 851 F.2d at 1378.

Plaintiff explains his delay in filing suit was due to a number of factors. In 1979 the Court of Claims found that one Reserve officer on a promotion board was not "an appropriate number" under 10 U.S.C. § 266(a), and concluded that a separation pursuant to such an illegally constituted board was invalid. *Stewart v. United States,* 222 Ct.Cl. 42, 50, 611 F.2d 1356, 1360 (1979); *Mulcahy v. United States,* 229 Ct.Cl. 844, 844 (1982). No final judgment was entered in *Stewart,* however, as the court remanded the case back to the correction board for consideration of the Reserve representation issue. In view of the AFBCMR's subsequent disagreement with *Stewart,* plaintiff explains his reason for failing to file a claim before the correction board until 1985 was that he believed resort to the board before the 1985 *Grant* decision would have been fruitless. Therefore, he waited for the Claims Court to recognize the existence of a cause of action, in *Grant v. United States,* No. 285–83C (Cl.Ct. Apr. 24, 1985). In an unpublished order, the Claims Court in *Grant* indicated there was a problem, under 10 U.S.C. § 266(a), with the composition of a major promotion board that convened in 1975. The court concluded, however, that though the plaintiff's claim had merit, it was barred by laches due to his delay of five years and ten months before filing suit.

■ In the present case, plaintiff admits to a lengthy delay before challenging his discharge, but plaintiff argues the delay was not unreasonable under the totality of the circumstances as discussed above.

tions.

The court need not decide whether plaintiff's delay was unreasonable and unexcused, because, as discussed below, defendant was not prejudiced by plaintiff's delay, and thus laches does not bar his claim. *See Cornetta, supra.*

In the present case, the government advances substantially similar back pay and "second salary" arguments as in *Cornetta* to show economic prejudice.[5] In *Cornetta,* the government alleged economic prejudice, but the Federal Circuit rejected the government's position that the claimant's potential receipt of back pay if he is successful on the merits is sufficiently prejudicial to impose a laches bar. "We therefore hold that potential receipt of back pay alone is insufficient to show prejudice to the government...." *Cornetta, supra,* 851 F.2d at 1381. The court reasoned that such a rule would place a claimant in the untenable position of minimizing his injury to sustain a court action. *Cornetta, supra,* 851 F.2d at 1380.

In addition, the Federal Circuit rejected the government's argument that prejudice to the government will be presumed on the theory that "if a claimant prevails, the government will be required 'to pay two salaries, over a long period of time, when it has received the services of only one person.'" *Cornetta, supra,* 851 F.2d at 1379 (quoting *Brundage, supra,* 205 Ct.Cl. at 510, 504 F.2d at 1386). In rejecting the presumption of prejudice, the court noted that military officers are part of a pool, and that unlike civilian employees who are generally replaced by lateral hiring, the military generally reassigns the duties of a discharged officer to those officers already on board. *Cornetta, supra,* 851 F.2d at 1379.

In the present case, the government advances back pay and "second salary" theories substantially similar to those it relied on in *Cornetta* to show economic prejudice.[6] Despite the government's insistence that *Cornetta* does not control the present case, however, the court views *Cornetta* as binding precedent with regard to the laches doctrine in military pay cases. Therefore, the court rejects the government's theories of economic prejudice in light of *Cornetta.*

 Having considered and disposed of defendant's retroactivity and laches arguments, the court must consider the correction board's decision. The court's review of correction board decisions is necessarily limited. Unless plaintiff can show that the correction board's decision was arbitrary or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, the court will uphold the decision. *Sanders v. United States,* 219 Ct.Cl. 285, 298, 594 F.2d 804, 811 (1979); *Paskert v. United States,* 20 Cl.Ct. 65, 71 (1990). Here, after finding that Mai's claim was barred by the board's three-year statute of limitations, the correction board apparently reviewed plaintiff's claim on the merits. Based on its review of Mai's Officer Effectiveness Ratings (OERs) from 1968 to 1975, the board found that Mai's performance record was "erratic," and that there was no evidence that the promotion selection boards acted improperly in failing

---

5. Mai seeks back pay in the approximate sum of $79,818, which represents the difference between the pay Mai would have received as an officer ($187,754), and the pay he actually received as an enlisted man ($107,836).

6. In its briefs and at oral argument in this case, the government argued vigorously that the court should reject *Cornetta* and follow antiquated Supreme Court cases such as *Nicholas v. United States,* 257 U.S. 71, 42 S.Ct. 7, 66 L.Ed. 133 (1921), and *Norris v. United States,* 257 U.S. 77, 42 S.Ct. 9, 66 L.Ed. 136 (1921), which defendant reads as holding that public employees must pursue their rights diligently, and failure to do so will bar their claims, regardless of prejudice to the government. *See also Stager v. United States,* 262 U.S. 728, 43 S.Ct. 519, 67 L.Ed. 1203 (1923); *Arant v. Lane,* 249 U.S. 367, 39 S.Ct. 293, 63 L.Ed. 650 (1919). These cases were considered and distinguished in *Cornetta,* however, on the basis that they all involve civilian, rather than military, employees. *Cornetta, supra,* 851 F.2d at 1376. Moreover, the Federal Circuit found that *Nicholas, Norris,* and *Stager* were not technically premised on laches, but rather on the theory that the employees effectively abandoned title to their positions by delay in filing suit. *Id.* Despite the government's insistence that *Cornetta* is an erroneous decision, the court views it as binding precedent on this court with regard to the laches doctrine in military pay cases.

to promote plaintiff. However, in light of the Federal Circuit's holding in *Sargisson* that section 266(a) is not to be applied retroactively, and in light of cases such as *Stewart* and *Yerxa* indicating that promotion selection boards with only one Reserve officer are improperly constituted when they consider both Reserve and regular officers for promotion, the court cannot uphold the decision of the correction board affirming Mai's involuntary discharge. *See Stewart, supra,* 222 Ct.Cl. at 52, 611 F.2d at 1360; *Yerxa, supra,* 11 Cl.Ct. at 127–28. Under the circumstances of this case, plaintiff is entitled to the relief he seeks. One further jurisdictional consideration merits mention, however.

## D. Voluntary Retirement

 It is a well-established rule of law that the court has a duty "to determine *sua sponte* whether it has jurisdiction of any claim before it, and this may be done at any time during the pendency of the case." *Fincke v. United States,* 230 Ct.Cl. 233, 247, 675 F.2d 289, 297 (1982). This is so regardless of whether the issue of subject matter jurisdiction is raised by the parties. RUSCC 12(h)(3); *Skirlick v. United States,* 17 Cl.Ct. 735, 737 (1989), *aff'd,* 904 F.2d 45 (Fed.Cir.1990).

The Federal Circuit has held that the Claims Court lacks subject matter jurisdiction over a service member's subsequent claim for back pay when he has voluntarily retired from active duty in the military. *Sammt v. United States,* 780 F.2d 31, 32 (Fed.Cir.1985). In *Sammt,* a retired Army major brought suit in the Claims Court for back pay and correction of his military records. Sammt argued that his nonselection for promotion was based in part on incorrect information in his military records. The Federal Circuit concluded by analogy to civilian pay cases that when a service member chooses voluntary retirement, that choice deprives the Claims Court of jurisdiction over subsequent suits for back pay and correction of records. *Sammt, supra,* 780 F.2d at 32–33. *Sammt* has been followed by the Claims Court to bar jurisdiction over back pay claims in *Petrick v. United States,* 12 Cl.Ct. 700, 702

(1987), and *Tannehill v. United States,* 18 Cl.Ct. 296, 299, 302 (1989).

In supplemental briefing, as requested by the court during oral argument, both parties state that the court has subject matter jurisdiction in this case, pointing out that there were significant differences in the facts of this case and the facts present in the *Sammt* case. The court agrees.

## CONCLUSION

For the foregoing reasons, the court grants plaintiff's motion for summary judgment, and accordingly, defendant's summary judgment motion is denied. The parties are directed to advise the court, within thirty (30) days of the date of this opinion, as to the amount of the judgment to be entered in plaintiff's favor, and as to the appropriate adjustments to be made in plaintiff's military records.